No. 24,282.

Milt Ross, *Appellant*, v. Haddam State Bank, *Appellee.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Services for Labor on Farm—Contract Construed.* A contract between a bank holding a chattel mortgage and the mortgagor, by which it allowed the property covered to remain in his possession on his farm under an arrangement that a part of the proceeds were to apply upon the indebtedness, and that the bank was to advance $50 a month for the payment of a person named, for labor on the farm, is held under the evidence to authorize such laborer to maintain an action against the bank for payment for his services on that basis.

2. SAME. A clause of the contract making the bank the judge of the necessity of certain expenses is held not to apply to the laborer's compensation.

3. SAME. If the contract referred to was contrary to the statute forbidding a bank to "employ its moneys, directly or indirectly, in trade or commerce, by buying and selling goods," and requiring it to dispose of chattels in its possession as soon as possible, that did not justify the bank in refusing to pay the laborer for services actually rendered. Nor did any breach of the contract on the part of the mortgagor relieve the bank from liability to the laborer, so long as it permitted the arrangement to remain in operation, and he continued to perform the services.

Appeal from Washington district court; `John C. Hogin, judge. Opinion filed March 10, 1923. Reversed.

*Edgar Bennett,* of Washington, for the appellant.
*N. J. Ward,* of Belleville, for the appellee.

The opinion of the court was delivered by

Mason, J.: On April 24, 1920, the Haddam State Bank entered into a written contract with C. I. McHenry by the terms of which he was to use on his farm certain personal property on which the bank had a chattel mortgage in the form of a bill of sale, a part of the proceeds to be used in the payment of his indebtedness to the bank. One provision of the contract was that the bank was to advance $50 a month for the payment of Milt Ross for labor on the land. Ross brought this action against the bank for his services on the farm from October 12, 1920, to March 1, 1921. A demurrer to his evidence was sustained, and he appeals.

1. The contract is the one considered in *Bank v. McHenry*, decided at the same time as this case (*ante*, p. 39). The paragraph in

which the present plaintiff is referred to reads as follows: "That said first party shall not be liable or responsible in any way for the proper farming of the above-described land, but in consideration of the said crops shall advance the sum of $50 per month for the payment of Milt Ross for labor upon said land and shall also advance such funds as are necessary and proper for seed, oil, repairs to machinery and such other necessary expenses as are required to properly care for the property belonging to said first party and mature and harvest the crops on said lands, first party to be the sole judge of the necessity of such expenses." The bank contends that the agreement to advance $50 a month for the payment of the plaintiff is not one made for his benefit in such sense as to enable him to sue upon it, the benefit to him being only incidental and therefore insufficient for that purpose. (*Burton v. Larkin*, 36 Kan. 246, 13 Pac. 398.)

The plaintiff testified to this effect: He worked at McHenry's from October, 1919, to March 1, 1921. He was paid for his work to October 12, 1920, but not for the remaining period. In April, 1920, the representative of the bank told him that if McHenry signed the contract already referred to the bank agreed to advance $50 a month for his wages until the first of March. This was in response to his inquiry whether a check which he had from McHenry, and which the bank paid, was any good. Shortly after this he learned that the contract had been signed and in July he saw a copy of it. The banker never told him not to continue at work. In November, 1920, he presented a check from McHenry and the bank refused to pay it, making the statement in January that because of a controversy over some wheat he would have to look to McHenry and not to the bank. Another check was drawn which the banker at first agreed to pay, but after some argument with McHenry refused to take, not saying anything however about the plaintiff quitting work.

This testimony was objected to as an attempt to vary the terms of the written contract by parol, but we think it competent, having no tendency to contradict the writing, and shedding some additional light upon the relations of the parties. The bank's position is not that of one making a promise to pay the debt of another. It appears to have had a direct interest in the carrying out of the plan of operating the farm, and there is at least room for the inference that it wished Ross rather than some other person to be employed there, and encouraged him to continue in the employment upon the faith

of the bank's promise. The showing was sufficient to authorize the plaintiff to maintain the action.

2. The bank contends that the provision that it was "to be the sole judge of the necessity of such expenses" gave it the right to stop the advancement of the money for the plaintiff's wages at any time. As we read the contract, the bank's obligation to furnish the $50 a month was absolute, and the clause just quoted had application only to its agreement to "also advance such funds as are necessary and proper for seed, oil, repairs to machinery and such other necessary expenses as are required to properly care for the property belonging to said first party [the bank] and harvest the crops on said lands." Whether the plaintiff had notice that the bank intended to stop the advancement of the $50 a month was a question of fact under the evidence. Whether such obligation as the bank owed the plaintiff extended for the full period for which the claim was made is not important on a demurrer to the evidence.

3. The bank contends that the construction we give the contract makes it *ultra vires*. The banking act contains these provisions:

"No bank shall employ its moneys, directly or indirectly, in trade or commerce, by buying and selling goods, chattels, wares and merchandise, . . . *Provided,* That it may hold and sell all kinds of property which may come into its possession as collateral security for loans or any ordinary collection of debts, in the manner prescribed by law, but any goods or chattels coming into possession of any bank as aforesaid shall be disposed of as soon as possible, and shall not be considered as a part of the bank's assets after the expiration of six months from the date of acquiring same." (Gen. Stat. 1915, § 524; Laws 1921, ch. 70, § 1.)

Here the bank, having lent money to McHenry upon his personal property, appears to have permitted him to retain and use it on his farm, doubtless in the hope of realizing more out of it in that way than by an immediate sale. The bank had a right to incur expenses for the handling of property upon which it had acquired a lien. The statutory requirement that chattels coming into the possession of a bank shall be disposed of as soon as possible has some elasticity, and the penalty of too long a delay seems to be that the property shall not be treated as a part of the live assets. The bank was placed somewhat in the attitude of becoming a party to a joint venture in running a farm, but it was for the purpose of attempting to collect an existing debt. We are not persuaded that it exceeded its powers, but if so that fact did not justify it in refusing

to perform its promise to pay for services actually rendered in its behalf. The evidence tends to show that the plaintiff did the work for which he was employed and that it was, in part at least, for the benefit of the bank and was so regarded by it. In order for the plaintiff to establish his right to recover his wages he was not required to prove that McHenry carried out his part of the contract. So long as the arrangement entered into between the bank and Mc-Henry, of which the plaintiff was told and in which provision was made for his payment, was allowed by the bank to remain in operation, the plaintiff was entitled to look to the bank for his pay upon the basis there provided.

The judgment is reversed, and the cause is remanded for further proceedings.

---

OPINION OVERRULING A MOTION FOR A REHEARING,
(Filed April 16, 1923.)

In a petition for a rehearing the defendant suggests that the opinion handed down is ambiguous; that under one construction the bank would be held liable for the services of the plaintiff even after it had notified him that it would no longer pay him. It asks that the language be modified in this and other respects so that the meaning may be made clear.

The sole question presented was whether the demurrer to the evidence was properly sustained. We hold that the evidence would support a recovery for the plaintiff's services at least for a part of the time for which he made claim. We do not pass upon the question whether such notice as the plaintiff testified the bank gave him would end the period for which it was liable. We hold that misconduct on the part of McHenry would not in and of itself relieve the bank from liability to the plaintiff for services performed under the contract. We do not hold that the bank was unable to sever its relations with the plaintiff on account of his own misconduct or of his participation in misconduct of McHenry. We think it inadvisable to decide further questions upon the present record.

The motion for a rehearing is overruled.