No. 27,256.

BEN ROBERTSON, *Appellant*, v. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF LABETTE, and THE FEDERAL SURETY
COMPANY, *Appellees.*

### SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT — *Employers Within Act — County Con-
structing Road.* A county, in constructing a hard-surface road, is not en-
gaged in trade or business within the meaning of the workmen's compensa-
tion law.

2. LIABILITY INSURANCE—*Provision for Benefit of Insured—Effect of Legal In-
capacity of Contracting Party.* An insurance policy, issued to a county for
the benefit of its employees in road work, is examined and held to contain
a contract between the insurance company and such employees, obligating
the company to such employee (or his dependents) to pay compensation for
injuries sustained in such employment compensable under the workmen's
compensation law, and the amount of such payments to be measured by
such law, and this obligation does not depend upon the legal capacity of
the board of county commissioners to apply for such policy and to pay the
premium thereon.

·Appeal from Labette district court; WILLIAM D. ATKINSON, judge. Opinion
filed January 8, 1927. Affirmed as to the Board of County Commissioners;
reversed as to the Federal Surety Company.

*Carl V. Rice,* of Parsons, for the appellant.

*Payne H. Ratner,* county attorney, and *Charles H. Cory,* assistant county
attorney, for appellee The Board of County Commissioners; *L. E. Goodrich,*
of Parsons, *John T. Harding, David A. Murphy* and *R. C. Tucker,* all of
Kansas City, Mo., for appellee The Federal Surety Company.

The opinion of the court was delivered by

HARVEY, J.: In this action Ben Robertson, a workman employed
by the county in the construction of a hard-surface road, sued the
county and the insurance company for injuries sustained by him
in such work, measured by the workmen's compensation act. De-
fendants separately demurred to the petition on the ground that it
did not state facts sufficient to constitute a cause of action. The de-
murrers were sustained. Plaintiff has appealed.

The petition alleged, in substance, among other things, that the
board of county commissioners of Labette county proposed the con-
struction of about eight miles of hard-surface road and applied for

Liability Insurance, 36 C. J. p. 1132 n. 12. Workmen's Compensation Acts,
C. J. p. 46 n. 28; L. R. A. 1917D 143; L. R. A. 1918F 190.

federal aid, which was granted. Bids for the work were received, considered and rejected, and the county proceeded to construct the road, employing labor and purchasing equipment for that purpose, and under the federal statute one-half of the cost thereof, including the premium on the insurance policy in question, was paid by federal aid. The county made application and received a policy of insurance from the defendant, Federal Surety Company, providing for payments to the employees of the county on such work for injuries sustained by such employees under the schedule of payments as fixed by the workmen's compensation act of the state of Kansas. While employed by the county on such work, and operating a stone crusher, plaintiff received an injury arising out of and in the course of his employment. The injury was reported to the county and to the surety company and claim for compensation made. The defendant surety company investigated the claim, admitted its liability thereon, and that plaintiff was entitled to $15 per week, and paid the same for four weeks, the total payment being $60, when further payments were refused.

It is contended in this appeal that the county is not liable to employees such as plaintiff in this case under the workmen's compensation act. This contention must be sustained. The workmen's compensation act applies "only to employment in the course of the employer's trade or business." (R. S. 44-505.) A county doing road work is not engaged in "trade or business" within the meaning of the statute. (*Gray v. Sedgwick County*, 101 Kan. 195, 165 Pac. 867.) This action is not founded in tort, but if it were the county would be liable only to the extent it is made so by statute (*Silver v. Clay County*, 76 Kan. 228, 91 Pac. 55; *Woolis v. Montgomery County*, 116 Kan. 96, 226 Pac. 244; *Bohm v. Racette*, 118 Kan. 670, 236 Pac. 811, and cases there cited), and there is no statute making the county liable for injuries such as are claimed in this case. There was no error in sustaining the demurrer on behalf of the county.

The demurrer on behalf of the insurance company is not so easily determined. It requires first an examination of the policy. Such examination discloses that the obligations of the policy are two-fold. A number of its provisions relate to indemnifying the employer, which is the county in this case, against loss by reason of liability imposed upon it by law for damages for injuries sustained by its employees. Since there is no such liability imposed by law upon the employer in this case, we need give no further consideration to

these provisions of the policy. A number of the provisions of the policy relate to the liability of the insurance company direct to the employee. It will be necessary to quote some of these provisions, which are as follows (italics and explanatory remarks in parentheses are ours) :

"Federal Surety Company . . . does hereby agree with this employer," (the board of county commissioners of Labette county) . . . "as respects personal injuries sustained by employees, . . . as follows:

"One (a) to pay promptly to any person entitled thereto," (persons entitled thereto are employees of the county whose remuneration was included in computing the premium on the policy) "under the workmen's compensation law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due,

"(1) To such person because of the obligation for any such injury imposed upon or accepted by this employer under such of certain statutes, as may be applicable thereto, cited and described in an indorsement attached to this policy, each of which statutes is herein referred to as the workmen's compensation law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse, or hospital services, medical or surgical apparatus or appliances and medicines, . . . are required by the provisions of such workmen's compensation law.

"It is agreed that all of the provisions of each workmen's compensation law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, *so far as they apply to compensation or other benefits for any personal injury or death covered by this policy,* while this policy shall remain in force. . . . .

"This agreement is subject to the following conditions: . . .

"D. The obligations of paragraph one (a) foregoing are hereby declared to be the *direct obligations and promises of the company to any injured employee covered hereby,* or in the event of his death, to his dependents; and *to each such employee* or such dependent *the company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees* or such dependents *and is enforceable against the company, by any such employee* or such dependents *in his name or on his behalf,* at any time and in any manner permitted by law, whether claims or proceedings are brought against the company alone or jointly with this employer. . . . *The obligations and promises of the company as set forth in this paragraph shall not be affected* by the failure of this employer to do or refrain from doing any act required by the policy; nor by any default of this employer after the accident in the payment of premiums or in the giving of any notice required by the policy or otherwise; nor by the death, insolvency, bankruptcy, *legal incapacity* or *inability of this employer,* nor by any proceeding against him as a result of which the conduct of this employer's business may be and continue to be in charge of any executor, administrator, receiver, trustee, assignee, or other person."

The policy contains provisions (five and six) which appear to extend its provision to a class of employees who would not come within the statutory provisions of the workmen's compensation act, and to injuries sustained at places which would not be covered by the statute, but these provisions are not in controversy here. There is an indorsement on the policy that the workmen's compensation act referred to in the policy is chapter 61 of article 6 of the General Statutes of 1915, entitled "Workmen's Compensation Act" as amended by chapter 226 of the Laws of 1917, and laws amendatory thereof. The policy also contains the following indorsement:

"This employer, upon the acceptance of this policy, agrees that at the effective date hereof he is bound by the above-cited workmen's compensation law . . . and will not give any notice or make any declaration to the contrary, . . . during the policy period."

The provisions of the policy above quoted, and referred to, constitute an agreement between the insurance company and the board of county commissioners, for the benefit of its employees designated therein, which creates a direct obligation of the insurance company to such employees for injuries compensable under the workmen's compensation act, the amount of which liability is measured by the terms of that act. As between the insurance company and the employee the provisions of the workmen's compensation law are a part of the contract only "so far as they apply to compensation or other benefits for any personal injury or death covered by this policy." It is argued on behalf of the insurance company that if the county was not obligated to pay plaintiff compensation on account of his injuries, then the insurance company was not; that the obligation of the insurance company was to indemnify the county against loss by reason of its liability to its employees, and since the county had no such liability, the insurance company had none. This construction of the policy is inaccurate. The policy does contain provisions to indemnify the county, defend its suits, pay its losses, etc., and since the county has no liability to plaintiff because of his injury, the insurance company is not liable under those provisions of the policy. But these are not the only provisions of the policy. The policy contains provisions creating a direct liability on the part of the insurance company to the injured employee, and by various provisions that is made specific and definite in the policy. But it is argued that the provision of the policy above quoted [One

(a) (1)] limits the liability of the insurance company to the employee only as the county is liable to him. Standing alone this clause might be so construed, but that is not its necessary construction, and when considered in connection with other provisions of the policy specifically applicable to the employee, as it must be, it is not so limited.

It is argued that the board of county commissioners had no authority to enter into the contract of insurance, or spend the money of the county for the premium. And, although it is no part of the record in this case, counsel have advised us, both in their briefs and oral argument, that the board of county commissioners has sued the insurance company in the district court of Labette county to recover the premium paid, which action is being contested by such defendant. We shall not decide the merits of that case on this appeal; we will determine that case when it reaches this court, if it does so. The question whether the county could lawfully pay the premium on the policy is in this case only collaterally, if at all. We simply note this; the petition alleges in substance that the policy was applied for, received, and the premium paid as a part of the construction of the road, and that the federal government paid one-half the cost of constructing, including one-half of the insurance premiums, thus recognizing the cost of the insurance as a proper item of cost in the construction of the road. At any rate the insurance company has accepted the premium, retained it, issued its policy, and is contesting an action for the return of the premium. We shall not assume that the board of county commissioners had no authority to take out this policy and pay the premium thereon, if the effect of such assumption is to relieve the insurance company of an accrued liability. The policy itself provides that the direct obligation of the insurance company to the employee "shall not be affected by. . . . the . . . legal incapacity or inability of" the board of county commissioners. So under the wording of the policy itself the legal incapacity of the board of county commissioners to enter into the contract of insurance is of no consequence in this case, involving as it does the direct liability of the insurance company to an employee of the county, whose remuneration was included in the computation to determine the amount of premium paid.

It is argued that the stipulation indorsed on the policy by which it was agreed that the county was operating under the workmen's

compensation act and that it would not withdraw therefrom within the term of the policy, was a mistaken assumption of the board of county commissioners and the representatives of the insurance company, and, since they were in error in that respect, the county not being within the workmen's compensation act, the policy is void for all purposes. We do not so construe this stipulation. There is no reason to assume that the members of the board of county commissioners, or the representatives of the insurance company, did not know that the county, in improving roads, was not under the provisions of the workmen's compensation act. The case of *Gray v. Sedgwick County,* supra, was decided in 1917, about eight years before this policy was issued. To assume the parties did not know their status with respect to the county's liability under the workmen's compensation act is a reflection on their intelligence; and to assume that, knowing the lack of liability of the county, a policy void as to all parties was applied for, issued and paid for, and the pay retained and its return contested, is a reflection upon their honesty and good faith. If any assumption is to be indulged in it is that the parties, with intelligence and in good faith, were entering into a contract of insurance for the employees of the county in such road work—the only parties named or referred to in the policy who could receive the benefits of the insurance provided for therein—and this stipulation was indorsed on the policy to aid that purpose. And to avoid any possibility of the acts of the county commissioners being held illegal and thus defeating the rights of the employee (or his dependents) to receive benefits for injuries compensable under and measured by the workmen's compensation act, it was provided in the body of the policy that "The obligations and promises of the company" (to the employees) "shall not be affected by . . . the . . . legal incapacity or inability of this employer" (the board of county commissioners). Hence, an analysis of the policy demonstrates that it is a contract in which the insurance company has obligated itself directly to the employee to pay such employee (or his dependents), as though he were under the workmen's compensation act, for injuries compensable under and measured by that act, and this the insurance company has agreed to do, irrespective of whether the employer (the board of county commissioners) had legal capacity to apply for the policy and to pay the premium thereon. There is no necessity for us to pass upon the legal capacity of the

county to take out this policy of its insurance. The question is not before us, except *arguendo,* and by the provisions of the policy a decision on that question is of no importance. The insurance company is bound to the injured employee irrespective of the legal capacity of the county to take and pay for the policy.

The interpretation we have given to this policy is apparently the same as that given to it by the parties at the time and soon after the injury to plaintiff. The injury was reported, claim for compensation made, the claim was investigated by representatives of the insurance company, the insurance company acknowledged in writing its liability to plaintiff, as measured by the workmen's compensation act, and paid total disability compensation at $15 per week for four weeks, when payments ceased.

But little more need be said. The plaintiff may maintain this action in his own name against the insurance company—the policy so provides and the authorities are to that effect. (*Anthony v. Herman,* 14 Kan. 494; *Burton v. Larkin,* 36 Kan. 246, 13 Pac. 398; *Ross v. Bank,* 113 Kan. 213, 214 Pac. 94; *Finkelberg v. Continental Cas. Co.,* 126 Wash. 543, 36 C. J. 1132; *American Automobile Ins. Co. v. Struwe,* 218 S. W. 534 [Tex. Civ. App.]; *Arizona Mut. Auto Ins. Co. v. Bernal,* 23 Ariz. 276.)

The insurance company has not only waived the legal incapacity of the county, in having the policy issued, if such action were illegal (*Green v. Annuity Association,* 90 Kan. 523, 135 Pac. 586; *Stanley v. Indemnity Association,* 112 Kan. 412, 210 Pac. 1096), but has specifically contracted that such legal incapacity, if it existed, should not affect its obligations to plaintiff.

The judgment of the trial court in sustaining the demurrer of the board of county commissioners is affirmed; and its judgment in sustaining the demurrer of the insurance company is reversed, with directions to proceed in accordance with this opinion.