## FIDELITY & CASUALTY CO. v. GRAY.

No. 26242. Sept. 28, 1937.

Bunch & Kelly, for plaintiff in error.

B. H. Carey, for defendant in error.

DAVISON, J. J. O. Gray, a former employee of the Oklahoma Gas & Electric

Company, suffered a partial loss of hearing in both of his ears due to a condition described as occupational neuritis affecting the nerves of the cochlea. The condition is said to have been caused by exposure to noise and the jarring of a steam turbine while he was working for the company at its power plant at Byng, Okla. He worked there from some time in the year 1923 until August of 1931.

It is conceded that Mr. Gray was engaged in one of those hazardous occupations falling within the Workmen's Compensation Law. Proceeding upon the theory that his disability was of accidental origin, he presented a claim for compensation to the State Industrial Commission, which, upon consideration of the claimant's evidence, denied him relief upon the theory that he had not sustained an accidental injury. The order of the administrative board was presented to us for review. Our decision was one of affirmance. Gray v. Oklahoma Gas & Elec. Co., 165 Okla. 301, 25 P. (2d) 761.

It is now conceded that the disability was not the result of an accident as that term is used and defined in connection with the Workmen's Compensation Act. The correlative concession is made that the injury is not compensable under the act.

In January of 1931 the Fidelity & Casualty Company of New York, a corporation, had issued to the Oklahoma Gas & Electric Company a policy of insurance described as a "standard workmen's compensation and employers liability policy." This policy was still in force when Mr. Gray ceased to be an employee of the company in August of 1931. The salary paid Mr. Gray was included in the total of salaries upon which the premium for the policy was computed and he was one of the employees protected by the policy to the extent of the protection afforded thereby.

On April 12, 1934, some six months after the former decision of this court (Gray v. O., G. & E. Co., supra), this action was instituted in the district court of Oklahoma county by Mr. Gray, as plaintiff, against the Fidelity & Casualty Company of New York, as defendant. Recovery for plaintiff's loss of hearing was sought upon the theory that the insurance company had by the terms of the policy assumed a direct responsibility to the plaintiff and was thereby obligated to compensate him for his injury in accord with the compensation provided by the workmen's compensation independent of any right on his part to recover under the act and also independent of any right on his part to recover judgment against his employer on the theory of negligence or tort, against which liability his employer might be protected under indemnity features of the insurance contract. On this theory he prevailed in the trial court. Upon consideration of a jury to which the matter was submitted his recovery was fixed at $3,000. The insurance company presents the matter on appeal. We shall continue to refer to the parties when not otherwise designated by their trial court designations.

That an insurance company may in a policy covering liability of an employer under the Workmen's Compensation Law assume other and additional liability is a point too obvious and too well settled to justify discussion. That the insurance contract may be so drafted as to make the additional liability thus assumed a direct obligation to an employee is likewise established law. Maryland Casualty Co. et al. v. Whitt, 167 Okla. 261, 29 P. (2d) 65; Lott v. Continental Cas. Co. (Kan.) 284 P. 823; Robertson v. Board of Com'rs of of Iott Co. (Kan.) 252 P. 196.

The question in this case is whether an additional liability sufficiently broad to warrant plaintiff's direct recovery for his injury from the insurance company was assumed by the company when it issued its policy to plaintiff's employer, not whether such a liability could have been assumed.

It is the plaintiff's theory that the policy of insurance issued by the company renders the company directly liable for any injury sustained by him, the compensation for the same to be fixed in accord with the schedule provided by the Workmen's Compensation Act. In attributing this meaning to the terms of the policy, the plaintiff relies upon the provisions of the policy contained in portions of following excerpts from the same. The portion of the policy described as "One (b)" is not relied upon by the plaintiff. It is quoted by us for the purpose of presenting a more comprehensive view of the policy:

"The Fidelity and Casualty Company of New York (Hereinafter called the Company) Does hereby agree with this employer, named and described as such in the Declarations forming a part hereof, as respects personal injuries sustained by em-

ployees, including death at all times resulting therefrom, as follows:

"One (a) **To pay promptly to any person entitled thereto under the Workmen's Compensation Law** and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse, or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law. It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this policy, while this policy shall remain in force. Nothing herein contained shall operate so to extend this policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached.

"One (b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. In the event of the bankruptcy or insolvency of this employer the company shall not be relieved from the payment of such indemnity hereunder as would have been payable, but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency, an execution against this employer is returned unsatisfied in an action brought by the injured, or by another person claiming by, through or under the injured, then an action may be maintained by the injured, or by such other persons, claiming by, through or under the injured, against the company under the terms of this policy for the amount of the judgment in said action not exceeding the amount of this policy.***

"Five. This agreement shall apply to such injuries sustained by any person or persons employed by this employer whose entire remuneration shall be included in the total actual remuneration for which

provision is hereinafter made, upon which remuneration the premium of this policy is to be computed and adjusted, and, also to such injuries so sustained by the president, any vice-president, secretary or treasurer of this employer, if a corporation. The remuneration of any such designated officer shall not be subjected to a premium charge unless he is actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman.***

"A. The premium is based upon the entire remuneration earned, during the policy period, by all employees of this employer, engaged in the business operations described in said declarations together with all operations necessary, incident or appurtenant thereto or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto. * * *

"D. The obligations of Paragraph One (a) foregoing are hereby declared to be the direct obligations and promises of the company to any injured employee covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees or such dependents and is enforceable against the Company, by any such employee or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the company alone or jointly with this employer. If the law of any state in which the policy is applicable provides for the enforcement of the rights of such employees or such dependents by any Commission, Board or other state agency for the benefit of such employees or such dependents, then the provisions of such law are made a part hereof, as respects any matter subject thereto, as fully as if written herein. The obligations and promises of the company as set forth in this paragraph shall not be affected by the failure of this employer to do or refrain from doing any act required by the policy; nor by any default of this employer after the accident in the payment of premiums or in the giving of any notice required by the policy or otherwise; nor by the death, insolvency, bankruptcy, legal incapacity or inability of this employer, nor by any proceeding against him as a result of which the conduct of this employer's business may be and continue to be in charge of an executor, administrator, receiver, trustee, assignee, or other person."

It is to be noted in connection with the foregoing policy provisions that, according to the general context thereof, two types of insurance are provided: (1) Workmen's

compensation insurance which is exemplified by paragraph one (a) and associated provisions, and (2) employer's liability insurance as stated in paragraph one (b) and other connected provisions. The workmen's compensation features of the policy are by the terms of paragraph D made a direct liability of the insurance company to the injured workman. However, the employer's liability insurance is indemnity insurance under which, as far as damages to an employee are concerned, the liability of the insurance company arises in the event the employer is liable.

Our concern in this case is with paragraph One (a) and associated provisions of the policy. The basic section on which plaintiff relies (paragraph One (a) ) provides for insurance to "Any person entitled thereto under the Workmen's Compensation Law." Standing alone this provision strongly indicates that the company is liable to any injured employee only if the employee has sustained an injury by reason of a cause which renders resulting disability compensable under and by virtue of the Workmen's Compensation Law, a type of injury which the plaintiff in this case admittedly has not sustained. Gray v. O., G. & E. Co., supra. Of course, a contract of insurance, like every other contract, must be interpreted as a whole and every portion thereof given effect, if reasonably practicable. Section 9465, O. S. 1931; Benefit Association of Railway Employees v. Mitchell, 129 Okla. 114, 263 P. 652; Lincoln Health & Accident Ins. Co. v. Buckner, Adm'x, 117 Okla. 35, 245 P. 582. If, upon examination of other portions of the contract, explanation is required or authorized, reference may be made for such explanation to the circumstances under which it was made and the matter to which it relates. Section 9471, O. S. 1931. Likewise an interpretation will be given which renders the contract operative as distinguished from inoperative. Section 9467, O. S. 1931.

We now have before us a disabled employee who, by reason of the nonaccidental cause of his injury, does not fall within the provisions of the Workmen's Compensation Act and who therefore does not fall within the natural meaning of the language used in section One (a), supra. An additional liability must be found to exist under the policy, if he is to prevail. We do not find in the other provisions of the policy any expressed intention on the part of the insurance company to assume responsibility for a type

of injury noncompensable under the act. The language used in the policy, regarded as a whole, is strongly indicative of an intent not to assume the additional liability sought to be imposed in this case. Insurance policies, when uncertain in meaning, are construed strongly against the company on the theory that the company which prepares the policy is responsible for the uncertainty. U. S. Fidelity & Guaranty Co. v. Town of Comanche, 114 Okla. 237, 246 P. 238; Lincoln Health & Accident Ins. Co. v. Johnigan, 114 Okla. 223, 245 P. 837; Metropolitan Life Ins. Co. v. Lillard, 118 Okla. 196, 248 P. 841. However, the policy now before us is not sufficiently uncertain in the respect which plaintiff urges to justify his recovery upon the application of that rule of construction alone. It is proper to note at this point that rules of construction are designed as an aid in determining the true intent of the parties. They are guides—not mandates of the law. As said by Elliott in his work on Contracts, par. 1507, p. 778:

"It must be constantly borne in mind, however, that the rules of construction are not strict rules of law. They are but aids in ascertaining the intention of the parties."

And again, at pages 729, 730 of the same work, it is said:

"The purpose of all rules for the construction of contracts is to aid in ascertaining the intention of the parties from a construction of the whole agreement. Thus, in the construction of an insurance policy it is the duty of the court to adopt that construction of the policy which in its judgment will best correspond with the intention of the parties. To ascertain the intention, regard must be had to the nature of the instrument itself, the circumstances under which it was executed and the object which the parties had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have."

One learned judge, in commenting for a federal court upon the application of rules of construction, observed:

"We must recognize, not only that there is a critical breaking point, as it were, beyond which no language can be forced, but that in approaching that limit the strain increases." Eustis Mining Co. v. Beer, Sondheimer & Co., Inc., 239 Fed. 976, at 982.

To this we may add that as we approach the limit, the reason must increase in proportion to the strain.

Assuming that plaintiff's suggested inter-

pretation of the policy in this case is within the limit to which the language employed in the policy could be forced (an assumption which we seriously doubt), plaintiff's cause must fail for want of circumstances sufficient to justify the marginal construction urged.

The policy was issued to an employer who employed workmen falling within the Workmen's Compensation Law to whom he might become liable under and by virtue of that law and to whom he might become liable in tort or for negligence. No surrounding or accompanying circumstance is shown to indicate that the employer desired to procure or pay for a broader "coverage" than would be essential for his. own protection. It was stipulated at the trial that the premium paid for the insurance was "commensurate with the rate for such insurance," which means nothing more than that the employer paid full value for the protection afforded by the policy, whatever that protection may have been. But treating the stipulation as an agreement that the premium paid was commensurate with an assumption of liability to pay compensation in accordance with the Workmen's Compensation Act, it adds nothing to plaintiff's case, since the insurance company admittedly assumed that liability under the policy and the nonaccidental char-.acter of the plaintiff's injury removed him from the provisions of the act. Plaintiff is seeking to impose a liability in addition to that which was, according to the stipulation, contemplated by the premiums paid. We are unable to find in the policy now before us or in the circumstances which surrounded or attended its execution any justification for the judgment rendered by the trial court. In fact, our consideration of the contract and the circumstances shown in connection with its execution impels a different conclusion.

The plaintiff, in presenting the case to this court, attaches considerable importance to the case of Maryland Casualty Co. v. Whitt, 167 Okla. 271, 29 P. (2d) 65, but concedes that case is not controlling in the case at bar, since the basis of that decision was the construction shown to have been placed upon the contract by the parties thereto. The admitted distinction is vital. Construction of a contract as adopted by the parties furnishes one of the strongest reasons for forcing the language of the contract to the limit of its meaning. Courts will approve such an adopted construction though the language employed "more strongly suggests

another construction" (Pittsburg Vit. Paving & Build. Brick Co. v. Bailey et ux. (Kan.) 90 P. 803), and when the occasion demands will even allow the practical construction to prevail over the "literal meaning of the contract." District of Columbia v. Gallaher (U. S.) 31 L. Ed. 526. It is obvious, however, that the practical construction of a contract by the parties thereto is peculiar to their contract and can have no relation to another, similar or identical contract unless the parties thereto have also placed the same practical construction on the instrument. Neither can a less efficacious reason (as, for instance, an invocation of the rule authorizing a construction of an insurance contract against the insurance company) accomplish the same result unless the substituted reason embodies in itself sufficient strength to justify the same result.

The adjudicated cases in which the rules of practical or contemporaneous construction have been applied to hold an insurance company liable under its contract are legion. The application of the rule in each case has required a judicial review of the facts demonstrating the construction adopted by the parties. If the same result should and could have been accomplished in each case by a terse application of the rule that insurance contracts are construed against the insurer, there has indeed been a wholesale dissipation of judicial time.

In the Whitt Case a city's policemen, who, as everybody is presumed to know, were not engaged in an employment falling within the Workmen's Compensation Act, were included in a policy of insurance and a premium charged commensurate with protection under the act. The company itself construed its policy as providing for compensation in accordance with the act to employees not falling within the act and the company's representative advised the city that such employees would be so paid. A policeman was accidentally injured through an assault by a third person. Since all things that in law are necessary to carry a contract into effect may be implied therefrom (section 9480, O. S. 1931), we found it possible under the policy to allow an enforcement of the actual and obvious agreement between the parties. Had we found it necessary to hold otherwise, the policy would in a large measure have been rendered inoperative (see section 9467, O. S. 1931), and justice would have been blind to the perpetration of a moral fraud. We so indicated in our opinion, as did the Kansas court in the case of Robertson v.

Board of Com'rs of Labette County (Kan.) 252 P. 196, by which we were guided.

Here the situation is entirely different. An employer has purchased a policy covering workmen falling within the act. The plaintiff was one of those workmen. Had his injury been such as to entitle him to compensation under the act, he would have been paid. The policy itself does not expressly provide a direct liability to injured workmen for disabilities arising from nonaccidental causes. No accompanying circumstance, act, or agreement indicates a mutual intent of the parties to so provide. The policy was fully operative notwithstanding plaintiff's inability to recover in this action.

In modern business, insurance companies by means of contracts assume responsibilities which perform an important economic function. Under the law those responsibilities, when assumed and to the extent of the assumption, cannot be lightly evaded. But the liability assumed depends upon the contract made, and that contract, when free from fraud, mistake, or accident, cannot be legally expanded beyond the contemplation of the parties as their agreement may be determined upon application of appropriate rules of construction and interpretation.

In accord with the **views herein** expressed, this case is reversed, with directions to enter judgment for the defendant.

BAYLESS, V. C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.