**ST. PAUL–MERCURY INDEMNITY CO. v. GRAYSON.**

No. 4358.

United States Court of Appeals Tenth Circuit.

Feb. 18, 1952.

Gus Rinehart, Oklahoma City, Okl., for appellant.

A. L. Brook, Muskogee, Okl. (Pierce & Pierce, Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Plaintiffs, the surviving wife and children of Roscoe Grayson, deceased, sued appellant St. Paul-Mercury Indemnity Company, herein called the "company", as third party beneficiaries under a Workmen's Compensation and Employer's Liability Insurance policy, issued by the company, to Henry O. Williams and Thomas Conrady, doing business as Rose Lawn Dairy, herein referred to as the "dairy." Roscoe Grayson, an employee of the dairy, was killed in Texas, while engaged as an employee in the regular course of his employment with the dairy, under such circumstances that there was no liability against the dairy because of his death.

The regular policy covered the operations of the dairy in the State of Oklahoma. By the terms of the policy, the company agreed as respects personal injury sustained by the dairy's employees, including death:

"One (a) to pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof, as they become due.

"One (b) to indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada.

"D. The obligations of Paragraph One (a) foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employee covered hereby or, in the event of his death, to his dependents; and to each such employee or such dependent the Company is hereby made directly and primarily liable under said obligations and promises * * *."

Plaintiffs cannot recover under sub-paragraph One (a) of the policy, because the death did not occur in Oklahoma and the Oklahoma Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., is limited to losses resulting within the boundaries of that state.[1] Plaintiffs may not recover under sub-paragraph One (b) of the above policy, because the nature of the loss complained of was such that it imposed no liability upon the dairy.

The contracting parties understood that the dairy also operated in states other than Oklahoma and desired to provide coverage for losses occurring in such states. A rider with respect to such losses was, therefore, attached to the policy and made a part thereof. So far as material, it reads as follows:

Whereas, the Employer insured by the undermentioned policy may undertake anywhere in the United States of America work which comes within the scope of classifications which appear in Item 3 of the Declarations of the said policy, and

1. Battiest v. State Industrial Commission, 197 Okl. 618, 173 P.2d 922; Beck v. Davis, 175 Okl. 623, 54 P.2d 371; Sheehan Pipe Line Const. Co. v. State Industrial Com'n, 151 Okl. 272, 3 P.2d 199.

"Whereas, the Employer hereby agrees to notify the Company promptly of such work undertaken in states not specifically mentioned in the said policy (which notification shall set forth the exact nature of the work, the place where it is to be done, and the estimated payroll or remuneration to be expended in connection therewith) in order that the Company may provide specific insurance in respect to such work by the attachment of endorsements to the policy or by the issuance of such policies of insurance as may be necessary to conform to the laws and requirements of the respective states, and in accordance with rules and regulations locally applicable to such policies of insurance.

"Now, therefore, it is understood and agreed that the said policy is hereby extended for the purpose of providing insurance in any state of the said United States, in which a Workmen's Compensation Law is in effect, except [2] * * * in respect of

"(1) The liability of the Employer under the Workmen's Compensation Law in effect in the State where the work is to be done.

"(2) The liability of the Employer for damages in respect of bodily injuries or death sustained by the employees of the Employer while engaged in such work.

"In consideraton hereof, the Employer agrees to keep a separate account of remuneration expended in each state in which such work is done, and shall pay to the Company a premium with respect to such work calculated at the insurance rates in effect on the date on which such work was commenced.

"*It is further understood and agreed that in the event of failure of the Employer to notify the Company as required by this second paragraph of this endorsement, the liability of the Company with respect to claims for damages made by the employees against the Employer shall be limited to the benefits prescribed by the Workmen's Compensation Law of the state in which injury or death*

*was sustained, and such benefits shall be payable only when it has been established that they would have been payable if the Employer and the employee had been subject to the Workmen's Compensation Law of that state.*"

It is conceded there was no liability under the Texas Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., for Grayson's death. The dairy was not and could not have brought itself under the provisions of that law, because of the number of employees engaged in its business in Texas. Appellee, however, contends that the italicized portion of the rider constituted a contract between the company and the employees, or more specifically, between the company and the dairy for the benefit of the employees, in which the company agreed to provide benefits over and above those provided in the regular contract. They contend in effect that therein it was agreed that, although the dairy was not and could not bring itself within the provisions of the Texas Compensation Law, the company would pay the employees the same amount they would have received in that state, had the employer been subject to the provisions of the Texas law, for loss suffered by them in that state, in the course of the employer's business.

The power to contract to pay employees compensation, as provided in the compensation laws of a state, notwithstanding that the employer was not subject to the provisions of such a law, has been upheld in numerous cases.[3] This is the construction the trial court placed on the rider. With this construction we cannot agree.

We think, when the contract set out in the rider is considered together with the principal contract of which it is a part, it is clear that the parties intended thereunder to afford the dairy the same protection with respect to its operations in states other than Oklahoma, as the main contract afforded it for its operations in Oklahoma. As

2. Here are listed states not covered by the rider.

3. American Mut. Liability Ins. Co. v. Duesenberg, 214 Ind. 488, 14 N.E.2d 919, 117 A.L.R. 1293; Id., 16 N.E.2d 698, 117 A.L.R. 1297; McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679; Robertson v. Board of Com'rs, 122 Kan. 486, 252 P. 196, Id., 124 Kan. 705, 261 P. 831; Maryland Casualty Co. v. Whitt, 167 Okl. 261, 29 P.2d 65.

pointed out, the Oklahoma contract protected the dairy against One (a) loss under the Workmen's Compensation Laws of Oklahoma and One (b) against loss by reason of liability imposed upon it by law for damages on account of injuries other than those coming under the Workmen's Compensation Law. That the rider was intended to afford the dairy the same protection in states other than Oklahoma is made manifest from the preamble of the rider, which after reciting that it is understood that the dairy will operate in states other than Oklahoma, states that "Now, therefore, it is understood and agreed that said policy (the Oklahoma Policy) is hereby extended for the purpose of providing insurance in any state of the United States in which a Workmen's Compensation Law is in effect except * * *[4] in respect of

"(1) The liability of the Employer under the Workmen's Compensation Law in effect in the state where the work is to be done.

"(2) The liability of the Employer for damages in respect of bodily injuries or death sustained by the employees of the Employer while engaged in such work."

This clearly delimits the extent of the coverage under the rider and makes it coextensive with, but no broader than, that of the principal policy.

█ The italicized portion of the rider with respect to notice does not purport to create a contract between the company and the employees or one for their benefit as third party beneficiaries, whereby the company agrees to pay them for losses for which it was not obligated to indemnify the dairy under either the principal contract or any rider attached thereto. The portion of the rider in which the dairy agreed to notify the company of operations in a state other than Oklahoma, as stated, was for the purpose of enabling the company to provide "specific insurance with respect to such work". The italicized portion of the rider dealing with failure to give notice, which appellee contends creates coverage broader than that afforded the dairy under subparagraphs (1) and (2) of the coverage provision of the rider, merely lays down the yardstick for measurement of the extent of liability of the company under either subparagraph (1) or (2) of the coverage provision of the rider, if no notice is given. To illustrate, let us assume that in Texas a much greater amount may be recovered for injury or death against an employer who is not within the coverage of the Workmen's Compensation Law. Then failure to notify the company of operations in Texas will prevent it from requiring compliance with the Texas Workmen's Compensation Law, or if the insured refuses to come thereunder, or by the nature of his operations cannot bring himself thereunder, will prevent the company from providing "specific insurance with respect to such work" commensurate with the risk assumed and require the payment of an adequate premium, based upon the amount of such increased risk. In that event, the Texas Workmen's Compensation Law is made the yardstick of measurement of liability, the same as though the parties were operating thereunder and the maximum amount of recovery under the rider is the maximum amount of recovery under the Texas Workmen's Compensation Law.

A number of related cases are cited by both parties to the appeal in support of their respective contentions. These cases are not decisive, because none of them turned upon the precise question or factual situation present here. The most helpful case we have found in construing the coverage of the rider is Fidelity & Casualty Co. of New York v. Gray, 181 Okl. 12, 72 P.2d 341. In that case the company issued a standard Workmen's Compensation and Employer's Liability policy to the Oklahoma Gas and Electric Company. In the policy the company agreed, so far as material:

"One (a) To pay promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due and all installments thereof as they become due.

"One (b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on

___

**4.** Here are listed states not covered by the rider.

account of such injuries to such of said employees as are legally employed * * *"

The obligations of Paragraph One, as in this policy, were made the direct obligations and promises of the company to the employees. An employee was injured under such circumstances that the injury did not fall under the Workmen's Compensation Law. After this was determined and his claim for benefits thereunder was rejected, he brought a direct action against the insurance company, as a third party beneficiary, claiming, as appellees do here, that under the policy the company assumed a direct responsibility "and was thereby obligated to compensate him for his injury in accord with the compensation provided by the Workmen's Compensation independent of any right on his part to recover under the Act and also independent of any right on his part to recover judgment against his employer * * *"

The Oklahoma Court rejected this construction of the policy and held it was a policy protecting the employer from liability under the Workmen's Compensation Law.

Such cases as Maryland Casualty Co. v. Whitt, 167 Okl. 261, 29 P.2d 65, and Massachusetts Bonding & Insurance Co. v. Reeves, 193 Okl. 441, 145 P.2d 381, 383, are not decisive. The Whitt case is cited and distinguished in the Gray case, supra. As the Court points out, it turned upon an operative construction placed upon the contract by the parties thereto. In the Reeves case, the sole question involved was "that the judgment is excessive * * *." The endorsement in the Reeves case was also materially different from the endorsement here, in that it was a voluntary compensation endorsement.

■ The court's finding No. 4 that "The parties to this action stipulated that Rose *Law* had fully complied with the terms of paragraph two of the endorsement; and the wages of the deceased, among others, were used as a basis in computing the aggregate premium paid by Rose Lawn to defendant, as required by the terms of the special endorsement" is challenged as not supported by the record. We think this position is well taken.

■

In paragraph two of the endorsement, the dairy agreed to notify the company promptly of work undertaken in states not covered by the principal policy, together with the nature of the work, the place where it was to be done and the estimated payroll to be expended in connection therewith. All the stipulation recited was that the photostatic copy of the report of audit was correct and that the wages of Roscoe Grayson were included as a basis of computing the premium on the policy. There is nothing in the audit or in this stipulation, indicating that the required notice or the items of information required therein was ever given.

■ A final contention in support of the judgment is that since the company accepted premiums based in part on the salary of Grayson it is estopped to deny that the loss came within the coverage. This fact alone does not work an estoppel. It is conceded that his salary was included with all other salaries in determining the base upon which premiums were computed, but there is no showing that all of his salary was earned from operations in Texas, or that it was made manifest in the report that it came from Texas operations. As far as the record reveals, the dairy merely reported the aggregate amount of salaries, from which, as stated, the premium was then computed. In the Gray case, supra, the salary of Gray was likewise included in the total salary upon which the premium was based. Apparently the Supreme Court of Oklahoma ascribed no significance to that fact. Furthermore, this was not one of the grounds relied upon in the complaint for recovery. It was not the theory on which the case was tried, nor was it the basis of the trial court's judgment.

We conclude the rider merely extended the coverage afforded to the insured by the principal policy to the dairy's operations in states other than Oklahoma and measured the extent of liability for such injuries by the provisions of the Workmen's Compensation Law of the state in which the injury occurred.

The judgment is reversed and the cause is remanded with directions to enter judgment for the company.