No. 48,121

VICTORIA ANN SHRIVER, *Appellant*, v. THE ATHLETIC COUNCIL OF KANSAS STATE UNIVERSITY, a Corporation, *Appellee.*

(564 P.2d 451)

Opinion filed May 14, 1977.

*Richard F. Waters,* of Johnson, Bengtson, Waters & Thompson, Chartered, of Junction City, argued the cause and was on the brief for the appellant.

*Richard H. Seaton,* of Manhattan, argued the cause, and *Charles L. Davis, Jr.,* of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This action was commenced by Victoria Ann Shriver against The Athletic Council of Kansas State University (the Athletic Council), a corporation, to recover damages for personal injuries which she alleges were sustained as a result of negligence on the part of the Athletic Council, its agents and employees.

Briefly, plaintiff, a student at the University, claims that she was injured while she was waiting to purchase football tickets. She arrived several hours before the tickets were to go on sale. The place of sale had been specified in advertisements by the Athletic Council. Plaintiff crawled into a sleeping bag and settled in for a long wait. A large crowd collected. Abruptly, the Athletic Council changed the place of sale and caused the change to be announced over loud speakers. This precipitated an uncontrolled mass rush by the crowd, and during the course of the stampede plaintiff was trampled and severely injured.

The Athletic Council moved for a summary judgment on the

ground that the action is barred by K.S.A. 46-901, *et seq.* The trial court sustained the motion, and plaintiff appeals.

The issues raised here are two: whether the Athletic Council, as an instrumentality of the University, partakes of that governmental immunity established by K.S.A. 46-901; and, if so, then whether that immunity has been waived.

Three decisions of this court bear upon the first issue. *Brown v. Wichita State University* (Brown I), 217 Kan. 279, 540 P. 2d 66; *Brown v. Wichita State University, P.E.C., Inc.,* 217 Kan. 661, 538 P. 2d 713; and *Brown v. Wichita State University* (Brown II), 219 Kan. 2, 547 P. 2d 1015.

In *Brown I* and the *P.E.C.* case, we analyzed the relationship between Wichita State University and Wichita State University Physical Education Corporation and held that the latter was a "mere instrumentality" of the University. In *Brown II* we upheld the constitutionality of K.S.A. 46-901, and found that tort claims against both the University and P.E.C. were barred by that statute, which grants governmental immunity to agencies of the state. K.S.A. 46-901 reads as follows:

"(a) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, except as is otherwise specifically provided by statute:

"(1) The state of Kansas; and

"(2) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; and

"(3) all committees, assemblies, groups, by whatever designation, authorized by constitution or statute to act on behalf of or for the state of Kansas.

"(b) The immunities established by this section shall apply to all the members of the classes described, whether the same are in existence on the effective date of this act or become members of any such class after the effective date of this act.

"(c) The state of Kansas and all boards, commissions, departments, agencies, bureaus and institutions and all committees, assemblies and groups declared to be immune from liability and suit under the provisions of subsection (a) of this section shall, in all express contracts, written or oral, with members of the public, give notice of such immunity from liability and suit."

The documents before us disclose the following: The Athletic Council was formed on November 6, 1933. On April 30, 1971, the official name of the corporation was changed to "The Athletic Council of Kansas State University, Inc." The purpose of the corporation is "Supervision and operation of intercollegiate athletic activities at Kansas State University." The council is a nonprofit corporation.

An agreement between the University and the Athletic Council, entered into on November 1, 1970, provides, in substance, that:

(1) The University grants the Athletic Council the exclusive right to maintain and operate an intercollegiate athletic program on land owned or controlled by the University in accordance with the rules and regulations of the University;

(2) the Athletic Council will be operated as a department of the University and be subject to the regulations and administrative policies of the University;

(3) the University agrees to furnish police and fire protection to Athletic Council facilities;

4) the Athletic Council agrees to provide management and operational services for operating an intercollegiate athletic program and to collect and disburse funds;

(5) the Athletic Council agrees to deposit the income from operation of the intercollegiate athletic program or the Council's facilities in special accounts with the comptroller of the University. The income may be withdrawn for the use of the Council and its operation in accordance with agreements now in effect by and between the University and the Council; and

(6) the Council agrees to make its books and records available to the University, these to be public records and to be audited annually by an independent CPA. Audit reports are to be furnished to the University, the Board of Regents, and the State Department of Post Audits.

Affidavits submitted by the Athletic Council state in substance that the Athletic Council is operated as another department of the University; its funds are handled and administered by the University fiscal offices and are kept in the University's bank account; the budget of the Council is prepared according to the same standards as other University departments; its salary levels follow the same criteria as those in other departments of the University. The University administers the personnel policies and standards of the Athletic Council, including its social security and retirement program. The Council operates as a standing committee of the Faculty Senate at the University. There are 13 members of the Council and they are selected as provided for in the constitution of the Faculty Senate. Under that constitution the Council is guided in its decisions by Faculty Senate policies and is required to submit contemplated changes in policy to the Senate for approval. Proposed changes are subject to rejection or modification by the president of the University or the Board of Regents, as well as the Faculty Senate. The Council is subject to the general administrative control of the University.

The constitution of the Faculty Senate provides that "The Athletic Council, guided in its decision by policies previously

approved by the Faculty Senate, shall formulate policies concerned with the conduct of intercollegiate athletics, and it shall submit contemplated changes in policy to the Faculty Senate for approval." Members of the Athletic Council consist of a chairman appointed by the president of the University, the director of athletics, the vice-president for student affairs, either the dean or associate dean of the college of arts and sciences, five faculty members appointed by the executive committee of the Faculty Senate, two alumni appointed by the president of the University on recommendation of the Alumni Association, and two students appointed by the Student Senate.

The Athletic Council is thus completely dominated by and is operated as an integral part of the University. In fulfilling the duties entrusted to it, and in its every activity and function, it is subject to the policy and control of the University. We conclude that the Athletic Council is an instrumentality of Kansas State University. As such, it shares in the governmental immunity mandated by the legislature through K.S.A. 46-901.

We turn now to the second issue, whether governmental immunity is waived. The parties stipulated that the Athletic Council ". . . is insured by a liability insurance policy insuring against negligence by said defendant; that said policy was not purchased with funds of the State of Kansas; that the insurer has denied liability and reserved the right to contest validity of the policy and coverage by the policy; and that the insurer asserts that the defendants [there were other parties defendant who are not parties to this appeal] would be obligated to pay from their own funds at least part, if not all, of any binding judgment which might be rendered against them."

The policy of insurance is not before us, and although its contents are readily discoverable under the provisions of one of our rules of civil procedure, *viz.* K.S.A. 60-226 (*b*) (2), the record does not disclose that any discovery along this line has been pursued. Thus we do not know the date of issuance of the policy, or what coverage the policy affords. We know only that the Council has a liability policy which was not purchased with state funds.

K.S.A. 74-4715 authorizes the procurement of liability insurance. It provides:

"(*a*) The procurement of insurance is hereby authorized for the purpose of

insuring the state or any county or city, and their officers, employees and agents against any liability, in addition to liability covered by the Kansas workmen's compensation law, for injuries or damages resulting from any tortious conduct of such officers, employees and agents arising from the course of their employment.

"(b) Such insurance *may* be procured for the state or employee thereof, by the committee on surety bonds and insurance established by K.S.A. 75-4101, subject to the applicable limitations of the acts contained in article 41 of chapter 75 of the Kansas Statutes Annotated and any amendments thereto, *and subject to appropriations being made therefor.*" (Emphasis supplied.)

K.S.A. 74-4716 provides for waiver of governmental immunity by the state, and a corresponding waiver of the defense of governmental immunity by the insurer. It provides:

"Upon procuring such insurance, the state, city or county thereby waives its governmental immunity from liability for injuries or damages resulting from tortious conduct of its officers, employees or agents during the course of their employment *only to the extent of the insurance so obtained.* Upon issuing such insurance, the insurer or insurers thereby waive any defense based upon the governmental immunity of the state, county or city or their officers, employees or agents."

Appellee argues that the insurance was not purchased by the committee on surety bonds and insurance; that such procedure is mandated by K.S.A. 75-4101, *et seq.*; and that the act of the Athletic Council in acquiring the insurance with its own funds does not waive immunity.

The legislature created the committee on surety bonds and insurance in 1969. Laws of 1969, Chapter 406, Sec. 1, codified as K.S.A. 75-4101. As amended by the 1971 legislature, the act applicable at the time of the occurrence with which we are here concerned provides:

". . . On and after January 1, 1970, no state agency shall purchase any insurance of any kind or nature . . . except as provided in this act. . . ." K.S.A. 1971 Supp. 75-4101.

K.S.A. 1971 Supp. 75-4105, also then in effect, provides in applicable part:

"All . . . insurance contracts purchased pursuant to this act shall be purchased by the committee in the manner prescribed for the purchase of supplies, materials, equipment or contractual services under K.S.A. 75-3738 to 75-3744, inclusive, and acts amendatory thereof and supplemental thereto: *Provided, however,* The state controller shall not draw any warrant for the payment of premium on any surety bond or insurance contract until the purchase of such surety bond or contract shall have been approved by the secretary of the committee. . . . [I]nsurance contracts having a premium in excess of fifty dollars ($50) purchased hereunder shall be

purchased on sealed bids as provided by law for the purchase of other materials, equipment or contractual services. . . ."

These statutes govern the procurement of insurance policies with *appropriated* state funds. By virtue of K.S.A. 1976 Supp. 76-720, athletic funds—such as those of the Athletic Council—are specifically exempt from and need not be spent in compliance with K.S.A. 75-3727 to 3744, inclusive. Such funds are not a part of the state treasury. K.S.A. 1976 Supp. 76-732. And the state is not liable for the obligations of the Council. K.S.A. 1976 Supp. 76-734.

We are not concerned here with the disbursement of appropriated state funds. Further, there is no showing that the policy here involved was procured after January 1, 1970. Be that as it may, we conclude that K.S.A. 75-4101, *et seq.*, are inapplicable when read in conjunction with the other statutes cited, and do not prohibit the acquisition of insurance by the Athletic Council with moneys which are not state funds. The obligation of the Athletic Council's insurance carrier depends upon the policy and the merits of plaintiff's claim—not upon the legal capacity of the Athletic Council to acquire and pay for the policy. *Robertson v. Labette County Comm'rs.*, 122 Kan. 486, 252 Pac. 196, 73 A.L.R. 87.

Governmental immunity is clearly and specifically waived by K.S.A. 74-4716 to the extent of the insurance obtained, whatever the policy limits may be. And though governmental immunity protects the Athletic Council from any judgment above the policy limits, its insurance carrier has waived the defense of governmental immunity (K.S.A. 74-4716) and may not rely upon that defense to thwart recovery by one claiming negligent injury. The reason for governmental immunity fails where any judgment entered will be paid with private, not public, funds.

We conclude that the trial court erred in sustaining the motion for summary judgment. The judgment is reversed.