(627 P.2d 384)

No. 52,038

STEVEN W. YOUNG, *Appellant,* v. KANSAS STATE PARK AND RESOURCES AUTHORITY, *Appellee.*

Opinion filed May 1, 1981.

*Lynn R. Johnson,* of Schnider, Shamberg & May, Chartered, of Kansas City, for the appellant.

*Steve Carr* and *Kenneth P. Hackler,* assistant attorneys general, and *Robert T. Stephan,* attorney general, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and WILLIAM M. COOK, District Judge, assigned.

SWINEHART, J.: This is an appeal from a decision of the District Court of Shawnee County sustaining defendant's motion for summary judgment in an action for damages.

Plaintiff raises two issues: (1) whether the plaintiff may maintain a cause of action against the defendant as a third-party beneficiary of a contract between defendant and the United States Army Corps of Engineers, and (2) whether K.S.A. 46-901, the former governmental immunity statute, is constitutional.

On June 22, 1975, the plaintiff Steven W. Young was camped with his family and friends in an area of Perry State Park directly adjacent to Lake Perry. This was the group's first trip to the park. Perry State Park is administered by the defendant Kansas State Park & Resources Authority and is situated on land leased to the defendant by the United States Army Corps of Engineers.

Plaintiff, his two brothers and their friends were swimming in the water in an area which had not been designated a swimming area. However, there were no signs posted so informing the campers. While plaintiff was swimming he would sometimes run a few feet and then dive into the water. On his last dive he struck an unidentified object beneath the water and sustained a broken neck. As a result of the injury, plaintiff has been a quadriplegic and is confined to a wheel chair.

After the accident it was discovered that there were uncleared tree stumps in the lake where plaintiff had been swimming, and it was alleged that plaintiff struck one of those stumps when he dove into the water and was injured. The stumps were not visible on the day of the accident. The defendant allowed these stumps to remain on land above conservation pool level to prevent or retard shoreline erosion.

Plaintiff filed suit against the defendant alleging negligence, breach of an express contract, breach of implied warranties, and breach of contract as a third-party beneficiary of the lease agreement between the defendant and the United States Army Corps of Engineers. The trial court sustained defendant's motion for summary judgment on the grounds that the causes of action for negligence and breach of implied contract were barred by governmental immunity, K.S.A. 46-901, and that the plaintiff's claims all sounded in tort, thereby precluding recovery under the contract theories.

The plaintiff first asserts that he stated a cause of action as a third-party beneficiary of the lease agreement between the defendant and the Army Corps of Engineers. Two contentions are involved in this argument: (1) that the defendant breached a duty owed to the plaintiff under the terms of the lease agreement, and (2) that the plaintiff was an intended (donee) beneficiary under the contract. The trial court did not discuss the plaintiff's status as a third-party beneficiary because it disposed of the question by finding that the Army Corps of Engineers and the Kansas State

Park & Resources Authority had not "expressly contracted to bind themselves to any standard of care, and thus any such standard would have to be imposed by law," in which case the action would sound in tort.

Two United States Army Corps of Engineers regulations contained in the rules and regulations governing the public use of water resources and development of projects administered by the Corps and incorporated into the lease agreement between the defendant and the Corps are pertinent to plaintiff's argument that the contract imposed a duty upon the defendant, which it breached. 36 C.F.R. § 327.1 (1975) provides:

"It is the policy of the Secretary of the Army acting through the Chief of Engineers to provide the public with safe and healthful recreational opportunities within all water resource development projects administered by the Chief of Engineers."

This provision is a policy statement. It should be noted, however, that the regulation does indicate a concern for safety.

Plaintiff primarily relies upon 36 C.F.R. § 327.5 (1975), however. It reads:

"Swimming, snork[e]]ling or scuba diving is permitted, except in those areas of the lake, reservoir or other body of water designated by the District Engineer and marked by the posting of appropriate signs."

The plaintiff contends that the defendant abrogated its duty to erect signs prohibiting swimming in violation of this section, and that this failure proximately caused plaintiff's injuries. All parties agree that no signs prohibiting swimming were posted in the area where plaintiff was injured, despite the fact that the defendant had designated the place as a nonswimming area. Plaintiff complains that the trial court found this regulation to be merely permissive and not a requirement with which the defendant was bound to comply. The interpretation plaintiff places upon the trial court's opinion is not strictly accurate, however. While the trial court observed that 36 C.F.R. § 327.5 (1975) constituted a statement of permitted activity, it was mainly concerned with whether the provision imposed an "enforceable duty to maintain" a "safe facility" in which case a standard of care could be gleaned from the document. The court concluded no duty was imposed by the regulation.

Both parties as well as the trial court discuss *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885

(1976), in which the Supreme Court extensively discussed the question of whether or not a particular cause of action sounded in tort or in contract. *Malone* involved an action for damages sustained by a patient as a result of the alleged failure of the defendants to provide competent, necessary, complete and authorized medical treatment. The court stated:

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties.

"Physicians, as well as hospitals, may enter into express contracts by which they bind themselves to warrant the success of treatment, or to otherwise obligate themselves above and beyond their ordinary duties. Such contracts may form the basis for breach of contract actions. *Noel v. Proud,* 189 Kan. 6, 367 P.2d 61, is illustrative. The claim there was that the physician breached an express warranty, a special contract for a particular result. Such is not the situation here.

"Certain duties and obligations are imposed upon physicians and hospitals by law. Breach of such duty by a physician is malpractice, and an action for damages for malpractice is one in tort, even though there was a contract, express or implied, for employment. *Noel v. Proud,* supra [186 Kan. 6], p. 11. Similarly an action for damages against a hospital for negligence, *i.e.,* for breach of duties imposed by law, sounds in tort. This is true though there may be a contract between the parties.

"In *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, 509, 470 P.2d 797, we quoted the rule from 52 Am. Jur., Torts, § 26, p. 379:

" 'Where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort.   .   .   .' " 220 Kan. at 374-375.

The Supreme Court concluded that the plaintiff's action in *Malone* was one in tort and thus applied the general rule that "a plaintiff will not be permitted to characterize a tort action as one in contract in order to avoid the bar of the statute of limitations or governmental immunity. [Citations omitted.]" 220 Kan. at 376.

*Malone* is particularly instructive in this action. In Kansas, there is a duty imposed by law for operators of swimming areas, whether pools or lakes, to exercise reasonable care towards the users of those facilities. Operators are not required to insure the safety of the users. See *Burgert v. Tietjens,* 499 F.2d 1 (10th Cir. 1974), which cited *Vukas v. Quivira Inc.,* 166 Kan. 439, 201 P.2d 685 (1949); *Swan v. Riverside Bathing Beach Co.,* 132 Kan. 61, 294 Pac. 902 (1931). This duty is analogous to the reasonable care

standard imposed upon physicians and hospitals discussed in *Malone.* The regulations in question (36 C.F.R. § 327.1 and § 327.5 [1975]) cannot be read to insure the safety of any person swimming in Lake Perry. Accordingly, the failure to erect a "no swimming" sign in the area where the plaintiff was injured, if a violation of duty at all, is a violation of duty imposed by law independent of the contract between the defendant and the Corps of Engineers, and even if plaintiff could be considered a third-party beneficiary, he has no cause of action under the contract theory.

Plaintiff's argument that, unlike *Malone,* he relied upon a specific contract provision establishing a standard of care not required by law, is not compelling. The duty owed may not be viewed merely as the posting of signs as plaintiff contends. Rather, the duty must be viewed in a broader sense—as one involving a standard of care—with the erection of a "no swimming" sign as one of many possible manifestations that defendant did or did not meet that standard. As mentioned, Kansas recognizes a reasonable standard of care imposed by law upon operators of swimming facilities. Therefore, we find that plaintiff's action, if any, sounds in tort, and it is not necessary to further decide whether plaintiff was an intended third-party beneficiary.

Plaintiff next urges this court to "reexamine the statutory provisions of K.S.A. 46-901 and the holding of *Brown II* [*Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 (1976)]" and conclude that the statute should be declared unconstitutional. The only argument presented by plaintiff that is different from those considered in *Brown II* is grounded upon passage of time, and the only new authority plaintiff cites that has not been reviewed before is the Kansas Tort Claims Act, K.S.A. 1980 Supp. 75-6101 *et seq.,* which became effective on July 1, 1979. Plaintiff argues that this act provides some indication that the classification scheme, set forth in K.S.A. 46-901 and upheld in *Brown II* as rational, can no longer be sustained in light of the Tort Claims Act. *Brown II* cited three interests in support of the legislative classification: (1) the necessity of protecting the state treasury; (2) enabling state government to function without the threat of time and energy consuming legal actions that could inhibit administration of traditional state activities; and (3) providing protection

demanded by administrative and high risk activities which were undertaken by various governments. 219 Kan. at 16-17.

A quick examination of the Tort Claims Act immediately discloses that the legislature did not with a sweeping hand abrogate all immunity formerly afforded to state agencies under K.S.A. 46-901. While the act provides that governmental entities "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of the state" (K.S.A. 1980 Supp. 75-6103), liability is subject to a host of exceptions set forth in K.S.A. 75-6104. Indeed, under the very facts presented in this case liability might not even be allowed under the Tort Claims Act due to the exception provided in K.S.A. 1980 Supp. 75-6104(n) which precludes liability for "any claim for injuries resulting from the use of any public property intended or permitted to be used as a park . . . for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

In several cases decided since *Brown II,* our Supreme Court has reaffirmed the constitutionality of K.S.A. 46-901. See, *e.g., Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380 (1978); *Whitmire v. Jewell,* 223 Kan. 67, 573 P.2d 573 (1977); *Shriver v. Athletic Council of KSU,* 222 Kan. 216, 564 P.2d 451 (1977). This court has also rejected such arguments in *Rodack v. State Highway Comm'n,* 2 Kan. App. 2d 535, 583 P.2d 1035 (1978), *reversed on other grounds* 225 Kan. 343, 591 P.2d 630 (1979); *Prout v. Fort Hays Kansas State College,* 1 Kan. App. 2d 309, 564 P.2d 558, *rev. denied* 225 Kan. 845 (1977).

Since *Brown II,* however, the Supreme Court has also demonstrated that it is willing, when the particular factual circumstances of an action require it to do so, to reconsider its holding that K.S.A. 46-901 is constitutional. In *Flax v. Kansas Turnpike Authority,* 226 Kan. 1, 596 P.2d 446 (1979), the Supreme Court confronted a wrongful death claim brought by a plaintiff against the Kansas Turnpike Authority. The suit was based upon a one-car collision on the Turnpike and alleged defects in the Turnpike roadway proximately caused the fatal collision. The Supreme Court concluded that it had to determine whether K.S.A.

46-901, which was apparently valid on its face, could be unconstitutional and invalid with respect to the specific set of facts before it. The court observed that motorists who travel other state highways, county or township roads or city streets by statute have recourse where property damage, injuries or death occur as a result of the failure of the governmental entity to properly maintain highways, roads and streets. Yet, under K.S.A. 46-901 the same right was not afforded to motorists traveling the Kansas Turnpike.

The court stated "the inconsistency in the application of the doctrine [governmental immunity], as now established by legislative action rather than judicial fiat, reaches the ultimate in its discrimination against one small segment of the motoring public . . . ." (226 Kan. at 7) and found it difficult to see why the Kansas Turnpike Authority should not be held responsible for wrongful deaths which occurred due to its negligence when other governmental entities maintaining roadways could be.

"The ultimate effect of our series of statutes is to create a small class of motorists who are subjected to discrimination for no other reason than they happened to take the turnpike and as a result, are deprived of a remedy granted the motorist on every other road in Kansas. While a majority of the present members of this court would continue, in most situations, to uphold the constitutionality of K.S.A. 46-901, based upon *Brown II* and subsequent cases, it is obvious that the statute cannot be constitutional as applied to turnpike defects. . . . Such a classification is unconstitutionally discriminatory and therefore we hold K.S.A. 46-901 is constitutionally invalid to the extent that it attempts to grant the KTA immunity for damage suffered by any person who shall sustain damage by reason of any defect in the Kansas turnpike . . . ." 226 Kan. at 11.

Plaintiff has failed to proffer a similarly compelling argument with respect to the facts of this case. Accordingly, this court, under the doctrine of stare decisis, must declare that K.S.A. 46-901 is constitutional, and therefore bars plaintiff's action.

Judgment affirmed.