No. 124,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

R.P., as guardian for A.P., and A.P.,
*Appellees*,

v.

FIRST STUDENT INC., d/b/a/ FIRST STUDENT MANAGEMENT, LLC,
and NELDA PIPER,
*Appellants*.

SYLLABUS BY THE COURT

1.

The Kansas Tort Claims Act (KTCA) defines "governmental entity" as encompassing both the state and municipalities. K.S.A. 75-6102(c). "State" under the KTCA is defined as "the state of Kansas and any department or branch of state government, or any agency, authority, institution or other instrumentality thereof." K.S.A. 75-6102(a).

2.

The Kansas Tort Claims Act (KTCA) defines "municipality" to include "any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution, or other instrumentality thereof." K.S.A. 75-6102(b). The KTCA does not define the term "instrumentality."

3.

To qualify as an instrumentality under the Kansas Tort Claims Act, a private entity that contracts with a governmental entity must either be an integral part of or controlled by a governmental entity.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed July 1, 2022. Affirmed.

*Jeremy K. Schrag* and *Alan L. Rupe*, of Lewis Brisbois Bisgaard & Smith LLP, of Wichita, for appellants.

*Michael L. Brooks*, pro hac vice, of The Brooks Law Firm, of Oklahoma City, Oklahoma, and *Rachel E. Smith*, *Michael P. Waddell*, and *Oscar P. Espinoza*, of Smith Mohlman Injury Law, LLC, of Kansas City, Missouri, for appellees.

*James R. Howell* and *Jakob Provo*, of Prochaska, Howell & Prochaska LLC, of Wichita, for amicus curiae Kansas Trial Lawyers Association.

*Andrew Foulston*, of McDonald Tinker PA, of Wichita, for amicus curiae The Kansas Association of Defense Counsel.

Before BRUNS, P.J., CLINE, J., and JAMES L. BURGESS, S.J.

CLINE, J.:  This case addresses whether a private company that provides bussing services under contract with a school district qualifies as a governmental entity under the Kansas Tort Claims Act (KTCA). We agree with the district court—under the circumstances presented in this case—the private company providing contractual services to the school district is not a governmental entity under the KTCA. Thus, we affirm its summary judgment ruling.

FACTUAL BACKGROUND

First Student, Inc. is a private, for-profit corporation incorporated under the laws of Delaware and headquartered in Ohio. During the 2015-2016 school year, First Student provided bussing services for students in the Shawnee Mission U.S.D. 512 school district under a contract with the district.

The contract identified First Student as an independent contractor and specified that neither First Student nor its employees were to be considered employees or agents of the school district. In line with this designation, the contract required First Student to supply and maintain all school busses and personnel necessary to serve the school district's needs. First Student controlled the hiring and firing of all operations personnel and drivers, subject to the school district's right to request removal of any unsuitable employee. First Student similarly controlled the planning of all stops and schedules, subject to school district approval, as well as the licensing and training of drivers. First Student was also required to maintain its own liability insurance and agreed to indemnify the school district from claims or demands "arising from or caused by any act of neglect, default or omission of" First Student in the performance of the contract.

In April 2016, A.P., a special-needs student in the school district, was sexually assaulted by another student while riding on a bus owned and operated by First Student and driven by Nelda Piper, a First Student employee. A.P. and her father, R.P., filed a negligence claim against First Student and later Piper, alleging that First Student and Piper (Defendants) failed to stop or prevent the assault. A.P. and R.P. (Plaintiffs) later moved to amend their petition to add a claim for punitive damages against First Student based on its failure to employ sufficient staff to monitor activity on the bus, as well as its failure to properly train Piper.

Defendants moved for summary judgment, arguing First Student qualified as a governmental entity under the KTCA because it was an instrumentality of the school district. As such, they contended Plaintiffs' claims should be dismissed for failure to provide pre-suit notice under K.S.A. 2021 Supp. 12-105b. Plaintiffs responded by arguing this notice was not required since First Student was an independent contractor and thus not covered by either the KTCA or K.S.A. 2021 Supp. 12-105b.

The district court denied Defendants' motion, finding it was "highly doubtful the Kansas Legislature intended to call a contracting for-profit Delaware corporation operating from its home base in Ohio, *i.e.*, a foreign entity that had agreed in [its] contract with a school district that it is an independent contractor, a Kansas 'municipality' or any other such governmental entity subject to the KTCA protections and K.S.A. 12-105b notice." At Defendants' request, the district court certified four issues of law for interlocutory appeal under K.S.A. 2021 Supp. 60-2102(c):

> "(1) Whether as a matter of law the Defendants are instrumentalities of the school district as defined by the [KTCA]; (2) If the Defendants are instrumentalities, whether they are entitled to receive a K.S.A. 12-105b pre-suit notice; (3) Whether Defendants received a K.S.A. 12-105b notice; and (4) Whether First Student, if it is an instrumentality of the governmental entity as a matter of law, should be exempt from punitive damages under K.S.A. 75-6105(c)."

This court granted Defendants' application for interlocutory appeal on August 12, 2021. Although the district court certified four issues for appeal, we find that resolving the first issue controls the outcome here. Since we find Defendants are not covered by the KTCA, we need not address the remaining three issues.

ANALYSIS

*Standard of review*

Resolution of this appeal requires us to interpret both the parties' contract and Kansas statutes. This exercise involves questions of law over which we have unlimited review. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

4

*Rules of statutory and contractual interpretation*

The parties' intent governs our interpretation of the contract, and the Legislature's intent governs our interpretation of Kansas statutes. *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020) (contract interpretation); *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016) (statutory interpretation). We ascertain that intent by examining the plain language used in the contract and statutes, giving common words their ordinary meanings. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). When doing so, we must consider statutory provisions *in pari materia* with a view of reconciling and bringing them into workable harmony if possible. *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, 1270, 221 P.3d 588 (2009). Likewise, we cannot isolate a sentence or provision of the parties' contract but must instead construe and consider the entire contract. *Russell*, 311 Kan. at 680. Last, we must avoid unreasonable or absurd results when interpreting both the parties' contract and Kansas statutes. 311 Kan. at 680 (construing contracts); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013) (construing statutes).

*The Kansas Tort Claims Act*

The KTCA applies to tort claims brought against governmental entities and their employees. See, e.g., K.S.A. 75-6103; K.S.A. 75-6104. The KTCA defines "governmental entity" as encompassing both the state and municipalities. K.S.A. 75-6102(c). "State" under the KTCA is defined as "the state of Kansas and any department or branch of state government, or any agency, authority, institution or other instrumentality thereof." K.S.A. 75-6102(a). The KTCA defines "municipality" to include "any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution or other instrumentality thereof." K.S.A. 75-6102(b). The KTCA does not define the term "instrumentality."

The KTCA specifically excludes from its coverage "any independent contractor under contract with a governmental entity except those contractors specifically listed in [the definition of 'employee']." K.S.A. 75-6102(d)(2)(B). The KTCA does not provide a definition for "independent contractor," but relies on agency principles to define the term. See *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 261, 891 P.2d 435 (1995).

Under the KTCA, governmental entities are not liable for punitive damages or prejudgment interest. K.S.A. 75-6105(a), (c). It also caps liability for compensatory damages at $500,000 per occurrence or the amount of the governmental entity's insurance coverage, if greater than $500,000. K.S.A. 75-6105(a); K.S.A. 75-6111(a). The KTCA grants governmental entities complete immunity from liability when engaged in certain enumerated activities. This immunity extends to the governmental entity's employees when they act within the scope of their employment. See K.S.A. 75-6104.

*K.S.A. 2021 Supp. 12-105b imposes a pre-suit notice requirement for claims against municipalities.*

Before suing a municipality or employee of a municipality under the KTCA, a plaintiff must provide the municipality with written notice of its claim, along with certain information about the claim specified by law. K.S.A. 2021 Supp. 12-105b(d). No action can be commenced against the municipality or its employee until after the municipality notifies the plaintiff that it has denied the claim or 120 days has passed after filing the notice of claim. K.S.A. 2021 Supp. 12-105b(d). Plaintiffs admit they did not provide pre-suit notice of their claim to First Student. Our Supreme Court has held the failure to substantially comply with the pre-suit notice statute deprives the court of subject matter jurisdiction over the claim. *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 871, 317 P.3d 782 (2014).

*This case calls us to decide whether Defendants are instrumentalities of the school district as defined by the KTCA.*

The dispositive question on appeal is whether First Student qualifies as a governmental entity under the KTCA. If it does, then both First Student (as a governmental entity) and Piper (as an employee of a governmental entity) fall under the Act. See K.S.A. 75-6103. Defendants say First Student qualifies because it is an "instrumentality" of the school district. As noted above, the KTCA defines "governmental entity" to include a "municipality," which is defined as "any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution or other instrumentality thereof." K.S.A. 75-6102(b) and (c). Thus, the district court certified the question of whether, as a matter of law, Defendants are instrumentalities of the school district as defined by the KTCA.

*The* ejusdem generis *interpretive canon provides guidance because the meaning of instrumentality is unclear.*

Plaintiffs argue the syntax of the KTCA's definition of municipality calls for application of the *ejusdem generis* canon of statutory construction. This canon instructs that where a more general word or phrase follows the enumeration of specific things, the general word or phrase should usually be understood to refer to things of the same kind or within the same classification as the specific terms. See *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 115, 991 P.2d 889 (1999); Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts*, 199 (2012). For example, if one speaks of "Eric Church, Luke Combs, Ashley McBride, and other famous artists," the last noun does not reasonably refer to Pablo Picasso (a renowned painter) or Auguste Rodin (a well-known sculptor). It refers to other famous *musical* artists.

Here, the definition of "municipality" includes two specific enumerations followed by more general phrases:  The first specific enumeration, "any county, township, city,

school district," is followed by the more general phrase "or other political or taxing subdivision of the state." K.S.A. 75-6102(b). The second specific enumeration, "or any agency, authority, institution," is followed by the more general phrase "or other instrumentality thereof." K.S.A. 75-6102(b). What is more, these two sets of enumerations and general phrases are nested within one another, with the second set acting as a sort of generic phrase to the first set's more specific enumeration of terms.

Applying *ejusdem generis*, we can interpret the general phrase "any agency, authority, institution or other instrumentality thereof" to mean something within the same classification as "any county, township, city, school district or other political or taxing subdivision of the state." K.S.A. 75-6102(b). And we can interpret the general phrase "other instrumentality thereof" to mean something within the same classification as "any agency, authority, [or] institution." K.S.A. 75-6102(b). As Plaintiffs note, each specifically enumerated entity in K.S.A. 75-6102(b) is a division of a larger governmental entity or a body organized by a governmental entity to perform a government function. They contend application of this statutory canon narrows the meaning of instrumentality to a public entity or arm of the state, and the determination of whether an entity qualifies thus turns on governmental control of the entity at issue.

Defendants resist application of this interpretive canon, claiming that, because the statutory text is plain and unambiguous, "extratextual considerations" are prohibited. But this canon is not extratextual since it relies on the statute's text to provide the context for interpreting the words used. And while the language is plain, the meaning of the term instrumentality, in the context of the KTCA, is ambiguous enough to call for this canon's application. See *Rockers*, 268 Kan. at 115 ("Moreover, when there is doubt as to the particular meaning of a word taken by itself, doubt may be removed by reference to associated words."). As Plaintiffs note, "[w]hen taken in context, a word may have a broader or narrower meaning than it might have if used alone." *Jones v. Kansas State University*, 279 Kan. 128, 149, 106 P.3d 10 (2005).

8

Plaintiffs analogize this situation to the one facing our Supreme Court in *Rockers*. There, the court used *ejusdem generis* to determine whether the Kansas Turnpike Authority (KTA) was a "municipality" under K.S.A. 12-105b (the statute requiring pre-suit notice of KTCA claims). The question in *Rockers* was whether the KTA qualified as an "other political subdivision" as that term was used in the definition of "municipality" in K.S.A. 12-105b. The court examined the specific political subdivisions listed in that definition before the phrase "other political subdivision" and found the KTA did not fit within the list (i.e., "county," "township," "school district," "drainage district"). *Rockers*, 268 Kan. at 115.

Similarly, Plaintiffs argue First Student does not fit within the list of instrumentalities in K.S.A. 75-6102(b). First Student is not a governmental "agency," "authority," or "institution," nor is it a "county, township, city, school district or other political or taxing subdivision of the state." K.S.A. 75-6102(b). Instead, it is a multi-state, for-profit private company whose own contract prohibits its consideration as an agent of the school district.

*The Kansas Supreme Court has previously defined the term "instrumentality" in the context of the Kansas Open Records Act.*

Defendants, on the other hand, argue we should look at the services First Student contracted to perform, rather than its private corporate status. They contend the Kansas Supreme Court looked at the function of the entity rather than who controlled it when determining whether an entity qualified as a "public agency" under the Kansas Open Records Act (KORA), which also includes the term instrumentality in this definition. See *State v. Great Plains of Kiowa County, Inc.*, 308 Kan. 950, 954, 425 P.3d 290 (2018). They argue the definition of instrumentality adopted by the court for KORA should be applied here.

9

In *Great Plains of Kiowa County, Inc.*, the Kiowa County Commission sought public records under KORA from a private not-for-profit corporation (Great Plains). Great Plains was formed to operate the county hospital under a lease agreement with the County, and that agreement allowed Great Plains to request that the County levy an ad valorem tax to support the hospital's operations. In 2012, one such levy contributed $300,000 to the hospital's operations; in 2013, $950,000; and, in 2014, around $1,050,000. These funds constituted 14%, 16%, and 20% of Great Plains' budget for those years.

After these significant increases, the County sought information under KORA about the hospital's budget to answer public interest questions about the hospital's finances and use of taxpayer dollars. Great Plains resisted the County's request, claiming it was not a "public agency" under KORA and was thus exempt from KORA's requirements. The County, designated as the State of Kansas, petitioned in district court seeking enforcement of KORA and access to the requested records. Both the district court and our court found Great Plains was subject to KORA. The Supreme Court agreed.

KORA provides for public access to records maintained by "public agencies" and defines that term to include

> "the state or *any political or taxing subdivision of the state* or any office, agency *or instrumentality thereof*, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state." (Emphases added.) K.S.A. 2021 Supp. 45-217(i)(1).

In interpreting this language, the Supreme Court relied on Black's Law Dictionary to define "instrumentality" as "'a thing used to achieve an end or purpose, or a means or agency through which a function of another entity is accomplished.'" *Great Plains of Kiowa County, Inc.*, 308 Kan. at 954. The court held that Great Plains met this definition.

10

In explaining this decision, the court noted that Kansas law authorizes counties to establish county hospitals operated by county boards. Kansas law also provides that a county board may enter into a lease agreement to allow a private entity to carry out the regular management of a county hospital established under this authority. In such a case, the court explained, the private entity becomes an instrumentality of the board. "Instead of managing the Hospital directly through an elected board, Kiowa County chose to have Great Plains manage the Hospital. Great Plains thus became the instrumentality for fulfilling the will of the voters of Kiowa County that they should have access to hospital facilities." 308 Kan. at 954.

Since both KORA and the KTCA use the term instrumentality (in KORA's definition of public agency and the KTCA's definition of municipality), Defendants contend we should apply the Kansas Supreme Court's definition of that term as it is used in KORA. They argue that, based on the similarities in statutory language between KORA and the KTCA, the term "instrumentality" should have the same meaning under both statutes. In Defendants' view, because First Student provides the means by which the school district accomplishes its statutorily mandated function of transporting students, First Student is an instrumentality of the school district. But there are important distinctions in both the language and purposes of the Acts which prevent transposing the definition of instrumentality in KORA to the KTCA.

*KORA and the KTCA differ in purpose and scope.*

When examining the language of the two statutes, we must keep in mind the context in which that language is used. *Reading Law: The Interpretation of Legal Texts*, 56 ("words are given meaning by their context"). "The subject matter of the document (its purpose, broadly speaking) is the context that helps to give words meaning—that might cause *draft* to mean a bank note rather than a breeze." *Reading Law: The Interpretation*

11

*of Legal Texts*, 56. Here, the KTCA's purpose infuses the meaning of its text, just as KORA's purpose infuses the meaning of its text.

KORA is a "sunshine law," designed to promote transparency in government activity by "shining the sun" into the way public services are performed. Nuckolls, *Kansas Sunshine Law; How Bright Does it Shine Now?*, 72 J.K.B.A. 28, 28-29 (May 2003). KORA mandates that all "public records shall be open for inspection by any person," subject to certain exceptions. K.S.A. 45-216(a); K.S.A. 45-218(a). The Legislature also specified that KORA "shall be liberally construed and applied to promote" this stated public policy. K.S.A. 45-216(a). Under KORA, access to governmental activity is the rule and shielding the governmental agency from such access is the exception. See 72 J.K.B.A. at 29. Thus, in *Great Plains of Kiowa County, Inc.*, our Supreme Court broadly interpreted the term "instrumentality" under KORA, since such a construction expanded access to records of the county hospital's operations.

The KTCA, on the other hand, has a different purpose. It was enacted to waive the common-law doctrine of sovereign immunity of the state and impose liability on governmental entities for their employees' torts just like a private employer is liable for its employees' torts (with limited exceptions outlined in the Act). Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 U. Kan. L. Rev. 939, 944 (2004). Thus, expanding the KTCA's application to all nongovernmental entities that provide contractual services to a governmental entity would not fulfill the Act's purpose since private entities do not enjoy common-law sovereign immunity.

Applying the KTCA to private entities would restrict liability, rather than expand it. As Plaintiffs note, the KTCA's immunity waiver is limited since the Act carves out several exceptions to the general rule of governmental liability. K.S.A. 75-6104; *Schreiner v. Hodge*, 315 Kan. 25, 37, 504 P.3d 410 (2022) (recognizing "the exceptions

12

to the general rule of liability are numerous and confirm 'there has been no wholesale rejection of immunity by the Kansas Legislature'"). It also contains damages limitations which do not apply to suits against private entities. K.S.A. 75-6105.

In addition, governmental entities are protected by the pre-suit notice requirement, which gives them "'the opportunity to investigate the claim, to assess its liability, to attain settlement, and to avoid costly litigation.'" *Nash v. Blatchford*, 56 Kan. App. 2d 592, 613, 435 P.3d 562 (2019) (quoting *U.S.D. No. 457 v. Phifer*, 729 F. Supp. 1298, 1306 [D. Kan. 1990]); see K.S.A. 2021 Supp. 12-105b(d). We find that—as a general rule—allowing private entities to seek refuge under these exceptions, limit their damages liability, or protect them from liability altogether if no pre-suit notice was provided would not serve the KTCA's purpose. Such a construction would limit private entity liability and provide them with immunities which are not found under common law and were not intended by the Kansas Legislature.

Our Legislature recognizes in the text of the KTCA that private entities are generally not entitled to the same protections afforded to governmental entities under the Act by carving out an independent contractor exception from its provisions. K.S.A. 75-6102(d)(2)(B). Here, the parties' contract expressly identified First Student as an independent contractor and stated that neither First Student nor any of its employees "shall be held or deemed in any way to be an agent, employee or official of" the school district. Thus, the district court found First Student was excluded from the Act.

*First Student's status as independent contractor under its contract with the school district is instructive here.*

Defendants ask us to ignore the parties' contract because they claim our Supreme Court ignored a similar provision in *Great Plains of Kiowa County, Inc.* when it found

13

Great Plains was an instrumentality under KORA. The parties' contract in *Great Plains of Kiowa County, Inc.* noted:

> "Relationship of the Parties. Relationship between the parties is solely that of Lessor/Lessee. Lessee shall not represent that it is Lessor's agent and shall not incur liabilities or obligations in the name of Lessor. Lessee shall conduct its operations of the Hospital and Clinic facility in its corporate name, though it may show on its letterhead, 'Kiowa County Hospital, Operated by Great Plains of Kiowa County, Inc.'"

We do not find Defendants' argument persuasive. First, the language of the *Great Plains of Kiowa County, Inc.* contract was not as strong as the language of the contract here, which specifically identified First Student as an independent contractor. And, more importantly, whether Great Plains was an independent contractor was not relevant to our Supreme Court's analysis under KORA. This is because the language of KORA does not exclude independent contractors from its coverage. On the other hand, the KTCA does.

The court in *Great Plains of Kiowa County, Inc.* examined the parties' relationship and found the parties intended the hospital managed by Great Plains "to be an arm of the county government," which "requested and received substantial funds from a public tax levy." 308 Kan. at 954-55. The parties here demonstrated no such intention that First Student act as an "arm" of the school district, nor does our review of the contract lead us to such a conclusion.

Defendants contend that excluding them from the protections provided by the KTCA because they are an independent contractor would cause a governmental entity to lose its status as a governmental entity by contracting with another governmental entity, since the entity would then qualify as an independent contractor. We do not find this argument to be persuasive because, as explained above, we do not find First Student to be a governmental entity, to be an arm of a governmental entity, or to be under the control of a governmental entity. Moreover, a governmental entity would not lose its KTCA

14

protections simply by contracting with another governmental entity because it would still be a governmental entity.

*The purpose and language of the KTCA suggest the definition of instrumentality should turn on governmental control of the entity at issue.*

Certainly, the function of a private entity contracting with a governmental entity is important to determining whether its records should be open to the public. As our Supreme Court found in *Great Plains of Kiowa County, Inc.*, records of private entities performing government services should be open to the public under KORA where they serve as an arm of a governmental entity. And while what actions or services the private entity performs may be relevant in determining whether one of the exceptions from KTCA liability applies, those actions or services do not control whether the private entity qualifies as an instrumentality protected by the KTCA. See K.S.A. 75-6104.

This focus on governmental control over the entity also aligns with the KTCA's purpose, which is to waive immunity for governmental entities in certain situations. As a private for-profit corporation, First Student enjoys no common-law protection from liability for its actions. And it makes little—if any—sense to subjectively immunize it, based solely on the type of services it contracts with governmental entities to provide. Such a transient immunity status would provide no predictability or guidance to claimants desiring to sue a private entity contracting with a governmental entity.

Historically, Kansas courts have relied on governmental control over the entity and not what the entity does when determining whether it is an instrumentality under the KTCA. While Defendants lean on *Shriver v. Athletic Council of KSU*, 222 Kan. 216, 564 P.2d 451 (1977), and *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 934 P.2d 121 (1997), claiming these cases hold that a private corporation acting at the direction of a state entity

15

is subject to the KTCA, a closer look reveals these findings turned on governmental control of the entities, not the services they provided.

In *Shriver*, the Kansas Supreme Court looked at whether the Athletic Council of Kansas State University was an instrumentality of KSU and thus subject to the KTCA's predecessor statute, K.S.A. 46-901. In *Gragg*, it looked at whether Wichita State University's athletic association (WSUIAAI) was an instrumentality of WSU under the KTCA. And in both situations the court found the entities subject to the KTCA since they were each an "integral part" of their respective universities and each entity was dominated or controlled by those universities. *Shriver*, 222 Kan. at 219 (finding KSU's Athletic Counsel was "completely dominated by and [was] operated as an integral part of the University" and was "subject to the policy and control of the University" "in its every activity and function"); *Gragg*, 261 Kan. at 1058 (finding WSUIAAI was "an integral part of WSU, as it is controlled and operated by its employees and enjoys the same privileges as WSU") (citing *Shriver)*.

Plaintiffs similarly point to *Lane v. Atchison Heritage Conference Center, Inc*., 35 Kan. App. 2d 838, 134 P.3d 683 (2006), as another case where whether an entity qualified as an instrumentality under the KTCA turned on control of the entity. In *Lane*, this court found Atchison Heritage Conference Center, Inc. (AHCC), an entity incorporated to manage a conference center owned by the City of Atchison, was an instrumentality under the KTCA. Relying on *Gragg*, our court noted AHCC was "substantially controlled by the City of Atchison through the terms of its annual lease, the composition of AHCC's Board, and the control over capital improvement funds for the conference center facilities," and was thus an instrumentality of the city. 35 Kan. App. 2d at 843-44.

And, last, Plaintiffs claim *Lee v. Orion Management Solutions, Inc*., No. 08-2242-DJW, 2010 WL 4106696 (D. Kan. 2010), is instructive. There, the United States District

16

Court for the District of Kansas considered whether Orion, a private corporation which managed golf courses, including one owned by the City of Leawood, was an instrumentality of Leawood under the KTCA. That court looked to *Lane* and *Gragg*, noting both decisions turned on the amount of control the governmental entity exercised over the private entity or whether the private entity was an integral part of the governmental entity. *Lee*, 2010 WL 4106696, at \*12. And when examining the facts in *Lane*, it found Orion did not establish it was an instrumentality. When reaching this decision, the court noted that, unlike AHCC in *Lane*, Orion was not incorporated to manage Leawood's golf course, it was not a wholly owned subsidiary of a Leawood-affiliated corporation, its purpose was not the economic development of Leawood, and its Board of Directors was not comprised of representatives of Leawood. Rather, Orion was a private, outside management company engaged in the business of operating golf courses in general (including three other golf courses). The court also found it significant that Orion was paid a monthly management fee and no evidence suggested that Leawood advised or controlled Orion. Rather, under the agreement between Orion and Leawood, Orion managed and controlled its day-to-day management activities. And, last, the agreement between Orion and Leawood specified that Orion was an independent contractor and not an agent of Leawood. *Lee*, 2010 WL 4106696, at \*12-13.

Defendants do not address *Lane* or *Lee*, and the amicus curiae brief filed by the Kansas Association of Defense Counsel simply asks us to ignore these cases (as well as *Shriver* and *Gragg*) because it claims each of those entities was "unquestionably a municipality under the KTCA." But this argument begs the question since the reason these entities were all found to be instrumentalities (and thus municipalities) is because they were integral parts of or controlled by a governmental entity. Here, First Student does not fall into either of these categories.

As Plaintiffs correctly note, First Student was not incorporated by a governmental entity to provide transportation services but was incorporated by private citizens to do

17

business for the benefit of its owners and shareholders. It is a private corporation serving many clients in addition to the school district. Nor is there any evidence that any owner, shareholder, officer, director, or employee of First Student is employed or otherwise affiliated with the school district. Although the school district exercises limited control over First Student through the right to approve routes, review certain reports, and request that First Student personnel be reassigned or busses taken out of service, the school district does not exercise significant control over how First Student performs its contractual obligations. Thus, when looking at control of the entity, First Student does not qualify as an instrumentality under the KTCA.

Finally, Defendants argue that adopting the "governmental control" test applied in *Shriver* and *Gragg* ignores the KTCA's clear language and leads to a circular and illogical reading of the Act. But restricting the meaning of instrumentality under the KTCA to those entities which are an integral part of or controlled by a political subdivision of the state does not supplant the independent contractor exclusion. Instead, it incorporates this definition, consistent with our directive to consider various provisions of an act *in pari materia* with a view of reconciling and bringing those provisions into workable harmony if possible. See *Beachner Constr. Co.*, 289 Kan. at 1270. That is, if an entity is subject to the control of, or integral to, a political subdivision of the state, it is an instrumentality. If not, it is an independent contractor excluded from the Act's coverage.

*A private entity is not an instrumentality under the KTCA just because it contracts with a municipality to provide statutory services.*

While Defendants ask us to ignore their contract's identification of First Student as an independent contractor, they ask us to heed the contractual description of the services they agreed to perform. Since First Student contracted to provide statutorily mandated transportation services for the school district, it argues it is an instrumentality of the school district and thus a governmental entity under the KTCA. Defendants again rely on

18

*Great Plains of Kiowa County, Inc.*, since that interpretation of instrumentality under KORA depended on the fact that Great Plains provided a traditional government service—managing a county-run hospital.

As explained above, we find that an interpretation of instrumentality which looks at the control or status of the entity—and not simply to what it does—is more aligned with the KTCA's language and purpose. And we find the facts of *Great Plains of Kiowa County, Inc.* to be distinguishable from the facts of this case. While First Student provided a discrete service and was not controlled by the school district, Great Plains' relationship with the county was so intertwined that our Supreme Court considered it to be an arm of the county.

Our courts regularly employ the same well-established standards for determining whether someone is an employee or independent contractor under the KTCA as they use to answer this question in other contexts. See *Nash*, 56 Kan. App. 2d at 600-01. The "right of control" test is primarily used, but sometimes the facts of a case call for a more in-depth examination (looking at several factors, most of which address control of the employer over the employee or independent contractor's work). See *Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 401-03, 250 P.3d 825 (2011). We see no reason to adopt a different test to determine whether a private entity is an instrumentality of a governmental entity under the KTCA.

Defendants' argument also ignores other KTCA language, which extends the Act's protections to certain independent contractors by including them within the definition of "employee." This includes individuals working for private nonprofit programs providing services to inmates in the custody of the secretary of corrections, employees of indigent healthcare clinics, and various independent contractors performing duties authorized by statute. See K.S.A. 75-6102(d)(1)(B), (d)(1)(D), (d)(1)(E), (d)(1)(G), (d)(1)(I), (d)(1)(J). If our Legislature meant to include these entities within the definition of instrumentality,

it had no need to specifically exclude them from the definition of independent contractor under the KTCA.

We find that Plaintiffs persuasively argue Defendants' overbroad interpretation of instrumentality (which would include independent contractors) conflicts with K.S.A. 75-6102(d)(2)(B) and renders the enumerated list of subcontractors in K.S.A. 75-6102(d)(1) redundant and meaningless. Appellate courts are required to avoid construing statutes in such a manner if possible. See *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020).

As Plaintiffs note, the Oklahoma Supreme Court persuasively dispatched a similar argument in *Sullins v. Am. Med. Response of Oklahoma, Inc.*, 23 P.3d 259 (2001). There, the court was asked to determine whether a private corporation which had contracted with a public trust to provide emergency medical services qualified as a "political subdivision" under Oklahoma's Governmental Tort Claims Act (GTCA). 23 P.3d at 263. While Defendants correctly note there are important differences between the GTCA and the KTCA, these differences do not dilute the Oklahoma court's point that simply contracting with a public entity to provide services to the public is insufficient to qualify for governmental immunity. 23 P.3d at 264.

Similar to the Oklahoma court, we conclude that our Legislature did not intend to transform a private entity into a governmental entity simply because it contracts to provide services to the state or a municipality. Likewise, we conclude that our Legislature did not intend to confer governmental immunity and other KTCA protections on independent contractors who are neither arms of a governmental entity or under the control of a governmental entity. Indeed, if we were to hold otherwise, it would likely lead to inconsistent application of the KTCA and unfairly impede a plaintiff's ability to predict whether a pre-suit notice of claim is required under K.S.A. 2021 Supp. 12-105b.

Here, we find that First Student expressly represented in the contract that it is an independent contractor and not "in any way" "an agent, employee or official" of the school district. Just as we must consider all portions of a statute together when construing its provisions, we must construe and consider the terms of the entire contract. *Russell*, 311 Kan. at 680. In other words, we cannot look at the services First Student agreed to provide in isolation, ignoring the rest of the parties' agreement.

*Looking to First Student's contractual status as an independent contractor is in line with our Supreme Court's consistent interpretation of the KTCA.*

Plaintiffs also mention that the Kansas Supreme Court has found a private corporation providing bussing for a school district was not a governmental entity under the KTCA. See *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 368, 819 P.2d 587 (1991). In that case, a special-needs student was allegedly molested by her bus driver. The bus driver worked for Specialized Transportation Services, Inc. (STS), which provided bussing services under a contract with the school district. Representatives of the student sued the driver for intentional battery and against STS and the school district on theories of respondeat superior, negligent hiring, and negligent retention and supervision of the driver. After the jury returned a verdict imposing liability on all three defendants, the school district and STS appealed. One issue on appeal was whether the school district should have been granted immunity under the KTCA's discretionary function exception. The school district argued that its failure to follow its own incident reporting procedures was a discretionary decision subject to immunity. Our Supreme Court found this exception did not apply.

When describing the purpose of the KTCA, the court found:

"In K.S.A. 75-6102(c), the term 'governmental entity' is defined to include a school district. Employee does not include an independent contractor under contract with

21

the governmental entity. K.S.A. 75-6102(d). Therefore, S.T.S. is not subject to the KTCA." 249 Kan. at 364.

Defendants correctly note the finding that STS was not a governmental entity under the KTCA is obiter dictum and does not control here. "'Obiter dictum'" is defined as "'[w]ords of a prior opinion entirely unnecessary for the decision of the case.'" *State v. Fortune*, 236 Kan. 248, 251, 689 P.2d 1196 (1984). At no point in the case did STS argue that it was subject to the KTCA, and the finding that STS was an independent contractor and not a governmental entity played no part in the court's analysis of the issue on appeal, which was application of the discretionary function exception. *Kansas State Bank & Tr. Co.*, 249 Kan. at 366-68. Yet while this finding is not determinative, we do find our Supreme Court's view of whether a private bussing contractor is a governmental entity to be persuasive. This is especially true because the court recognized the importance of STS's status as an independent contractor in determining whether it was subject to the KTCA.

We acknowledge the KTCA does not provide that a private entity can never be considered an instrumentality entitled to protections under the Act. The KTCA only excludes independent contractors that are neither arms of a governmental entity nor under the control of a governmental entity. But this does not mean First Student is protected by the KTCA under the circumstances presented in this case. This is because there is nothing in the contractual agreement between the parties to suggest that First Student is an integral part of or controlled by the school district. Instead, the contract establishes that First Student is an independent contractor providing contractual services to the school district.

We also appreciate Defendants' desire for consistency in the law when they advocate for adopting our Supreme Court's definition of the term instrumentality under KORA. But, as noted above, we find that differences in the language and context of

22

KORA and the KTCA justify giving this term a narrower meaning under the KTCA. See *Great Plains of Kiowa County, Inc.*, 308 Kan. at 957 ("Relying on the plain language selected by the legislature is the best and only safe rule for determining legislative intent, and such plain language takes priority over both judicial decisions and policies advocated by the parties.") (citing *State v. Spencer Gifts*, 304 Kan. 755, 761, 374 P.3d 680 [2016]). This restrictive interpretation also aligns with Kansas courts' consistent reading of the KTCA in *Gragg* and *Lane* (and our Supreme Court's reading of the KTCA's predecessor statute in *Shriver*).

In conclusion, we find that under the circumstances presented in this case, First Student does not qualify as an instrumentality under the KTCA because it is not an integral part of or controlled by the school district. Rather, we find that First Student is an "independent contractor under contract with a governmental entity." K.S.A. 75-6102(d)(2)(B). Because First Student is not an instrumentality of the school district, it had no right to receive pre-suit notice from the plaintiffs under K.S.A. 2021 Supp. 12-105b. Likewise, although we take no position on whether the district court should allow the plaintiffs to pursue a claim for punitive damages, we find that First Student is not exempt from such a claim under K.S.A. 75-6105(c). For these reasons, we affirm the district court's denial of summary judgment and remand this action to the district court for further proceedings.

Affirmed.